922 A.2d 620

**Willie EVANS**

v.

**STATE of Maryland.**

**No. 2446, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

May 3, 2007.

550

Anne K. Olesen, Washington, DC, for appellant.

James Williams (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., DAVIS, KENNEY, JAMES A., III (retired, specially assigned), JJ.

DAVIS, J.

The failure of the State to produce evidence available to it has long been advanced by counsel in argument to a jury as the rationale for finding reasonable doubt. When counsel for appellant, Willie Evans, resorted to this trial strategy, the presiding judge admonished the jury regarding its limited consideration of evidence not adduced. Appellant now asks us, in this appeal, to denounce the court's instruction regarding the State's obligation to produce evidence. As we shall observe, *infra*, remarkably, judicial action to clarify the jury's consideration of such arguments has received virtually no appellate attention.

Appellant was tried and convicted by a jury in the Circuit Court for Baltimore City (Berger, J.) on October 26, 2005, of Count One, Distribution of Heroin (Md.Code, Criminal Law

§ 5–602); Count Two, Possession with Intent to Distribute Heroin (Md.Code, Criminal Law § 5–602); Count Three, Possession of Heroin (Md.Code, Criminal Law § 5–601); Count Four, Conspiracy to Distribute Heroin (Md.Code, Criminal Law § 1–202); Count Five, Conspiracy to Possess Heroin with Intent to Distribute (Md.Code, Criminal Law § 1–202); and Count Six, Conspiracy to Possess Heroin (Md.Code, Criminal Law § 1–202). On November 22, 2005, appellant was sentenced to an aggregate of seven years imprisonment. Aggrieved by the court's decision, appellant filed this timely appeal, presenting the following issues for our review:

1. Whether the trial court erred in failing to suppress evidence illegally obtained from appellant in a search incident to an arrest made without probable cause[.]

2. Whether the trial court erred in instructing the jury on the State's failure to use certain investigative and scientific techniques, where the instruction hampered appellant's ability to present his legal defense and was not part of the Maryland Pattern Criminal Instructions[.]

## FACTUAL BACKGROUND

At approximately 11:00 a.m. on August 5, 2003, Detective William Bradley of the Baltimore City Police Department entered the 2100 Block of East North Avenue in Baltimore in an effort to conduct an undercover "buy bust" narcotics purchase. Less than an hour later, Baltimore City police arrested appellant and a codefendant, Antwon Peaks, in connection with the sale of heroin to Detective Bradley. Although Detective Bradley was the sole eyewitness to the alleged "buy-bust," he did not arrest appellant. Detective Bradley contacted Detective Steven Rose and an arrest team, consisting of approximately five other members of the Baltimore City Police Department, subsequently conducted the arrest. Detective Rose then searched appellant, finding one clear gel capsule containing suspected heroin in his back pants pocket.

In a pre-trial suppression hearing, appellant's counsel moved to suppress the evidence obtained from appellant,

citing as the basis of his motion the lack of probable cause. Both Detectives Bradley and Rose testified at the suppression hearing; however, the other members of the arrest team did not.

Recalling the morning of the alleged incident, Detective Bradley testified that the location was "real active," noting that "there were people out on the street" that day. He made eye contact with a man whom he later identified as Peaks. Peaks asked "what do you want?" Detective Bradley's response was "two red lines," referring to street level heroin. He testified that Peaks was standing alone when this exchange took place.

Detective Bradley stated that, at this point, a second man, whom he later identified as appellant, became involved in the sale. He explained that Peaks directed him to appellant, who was standing approximately fifteen feet away. Peaks stated to appellant "I know this guy. He's okay. Give him two." Appellant allegedly produced two gel capsules containing a white powder substance from the front waistband of his pants. Suspecting that the capsules contained narcotics, Detective Bradley handed a marked twenty-dollar bill to a third black male at appellant's request.[1] Detective Bradley testified that the entire interaction lasted "approximately a minute, minute and a half. That's it." He then returned to his unmarked car, parked approximately a block away and contacted the arrest team with a description of the three suspects.

Detective Rose testified that Detective Bradley advised him that three males were involved in the sale of heroin. Detective Bradley's description of the suspects was "mostly clothing, a little bit of physical." He stated that the team selected appellant and Peaks based on Detective Bradley's description of the suspects' clothes and location. Detective Rose did, however, testify that there may have been "a lot" of other people in the area, especially around the intersection of Collington and North Avenue, about a half a block away from

---

1. The third black male was never located.

where the suspects were arrested. Detective Rose and other members of the Baltimore City Police were parked a few blocks away from where the sale took place. The arrest was made within "a couple of minutes" after Detective Bradley contacted the arrest team.

A gelatin capsule containing heroin was recovered from appellant's back pocket subsequent to his arrest. No drugs were recovered from appellant's waistband, the area from where Detective Bradley claimed appellant had retrieved the gelatin capsules that he had purchased. Later, Detective Bradley returned to the scene in his vehicle and did a "drive-by" identification of the men whom the officers had stopped as two of the suspects who sold him the drugs.

At the close of the suppression hearing, the trial court denied the motion to suppress the gelatin capsule recovered by Detective Rose, finding that there was probable cause for appellant's arrest based on Detective Bradley's testimony:

> The Court is going to deny the motion to suppress at this time. Clearly, probable cause existed at the time of this incident. Clearly, a warrantless arrest is constitutional if police have probable cause to believe that a person is committing or about to commit a crime felony or a misdemeanor in the officer's presence. Probable cause is defined as a fair probability that contraband or evidence of a crime will be found at a particular place. Clearly, in this case, the detective, Detective Bradley, identified Mr. Evans as that person who he was instructed to approach with regard to purchasing the alleged controlled dangerous substances at issue. Clearly, based on his own testimony, that establishes the probable cause in this case and the Court will deny the defendant [appellant's] motion to suppress the gelcap of alleged CDS that was recovered from his back pants pocket.[2]

Over two years after the arrest, Detective Bradley testified as the sole eyewitness to the sale of heroin at the joint trial of

---

2. CDS is an abbreviation for Controlled Dangerous Substance.

appellant and Peaks. Detective Bradley's trial testimony was substantially the same as his testimony at the suppression hearing. He also acknowledged that he intended to conduct a number of buy-busts. He did not, however, employ video or audio equipment to record potentially illegal transactions even though the recording equipment was available in the Baltimore City Police Department. Detective Bradley claimed not to have had the authority to order its use. He also stated that pre-marked bills were used in this buy-bust.[3]

Detective Rose's testimony was also similar to his testimony at the suppression hearing. He noted that Detective Bradley described one suspect (later identified as Peaks) as wearing a light-blue shirt and blue-jean shorts and another suspect (later identified as appellant) as wearing a white t-shirt and blue-jean shorts. Detective Rose also added that Detective Bradley identified appellant and Peaks only after they were arrested.

## LEGAL ANALYSIS

### I

### PROBABLE CAUSE

Appellant contends that, during the suppression hearing, the testimony of Detectives Bradley and Rose failed to establish probable cause to arrest or subsequently search him. He bases his contention on the fact that the only eyewitness to the buy-bust was Detective Bradley, who relayed information to Detective Rose and the arrest team who made the arrest. Appellant argues that the description provided to Detective Rose was too general to establish probable cause to arrest him.

The State responds that appellant failed to raise this issue during the suppression hearing. Accordingly, the State argues that appellant is precluded by Maryland Rule 8–131

---

3. These bills were never recovered.

from raising this issue on appeal. Specifically, the State posits that appellant's argument during the hearing was that it was not proven that he was working in concert with Peaks. We agree.

Maryland Rule 8–131(a) provides in pertinent part,

Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Accordingly, Maryland appellate courts have consistently held that they will not review issues not raised or decided at the trial level. *See Taylor v. State,* 381 Md. 602, 612, 851 A.2d 551 (2004) (citing Md. Rule 8–131(a) in holding that a claim of double jeopardy was not preserved because it was not raised at the trial level); *Conyers v. State,* 354 Md. 132, 148, 729 A.2d 910 (1999) (citing Md. Rule 8–131(a) in holding that several issues in review of a death sentence were not preserved because they were not raised at the trial level); *Lerman v. Heeman,* 347 Md. 439, 450, 701 A.2d 426 (1997) (citing Md. Rule 8–131(b)(1) in holding that an indemnity and contribution issue was not preserved because it was not raised before the trial court or this Court); *County Council v. Offen,* 334 Md. 499, 508, 639 A.2d 1070 (1994) (citing Md. Rule 8–131(b)(1) in determining that specific zoning issues were not before this Court and citing Md. Rule 8–131(a) to hold that this Court should not have raised on its own the issue of zoning estoppel). We have specifically held that the failure to argue a specific theory in support of a motion to suppress evidence constitutes waiver of that argument on appeal. *Johnson v. State,* 138 Md.App. 539, 560, 772 A.2d 1260 (2001) (citing *Reynolds v. State,* 327 Md. 494, 502–03, 610 A.2d 782 (1992); *Brashear v. State,* 90 Md.App. 709, 720, 603 A.2d 901 (1992)).

Guided by these principles, our threshold issue is whether appellant raised the lack of sufficient description to establish probable cause at trial as he does in his brief. *Johnson* is a

case in which this Court answered this question. In that case, the appellant filed a pre-trial motion to suppress, among other evidence, written statements he made to the police. In sharp contrast to police testimony, the appellant testified that he was not read his *Miranda* rights and he was not given a waiver form to sign until the end of the interview. *Id.* at 557, 772 A.2d 1260. He further testified that he was punched by the detectives conducting the interrogation, which caused him to sign the statement. *Id.* at 558, 772 A.2d 1260. Defense counsel argued that the statement was the product of coercion and threats, yet made no mention of *Miranda*. *Id.* Instead, he argued that "the appellant had given the statement because he did not want his wife and daughter abused and because he was 'physically oppressed.'" *Id.* at 559, 772 A.2d 1260. Holding that the appellant's failure to argue this issue constituted a waiver on appeal, we declined to decide the *Miranda* issue, stating:

> [The] Appellant testified that he was not advised of his *Miranda* rights until the end of the interview and that he asked for a lawyer. His counsel argued that appellant was coerced into making his statements by physical force and threat, however, and did not present an argument based on *Miranda*.

*Id.* at 560, 772 A.2d 1260.

In the instant case, appellant's counsel questioned Detectives Bradley and Rose extensively about the description given to the arrest team.[4] However, his counsel's argument was premised upon the claim that appellant was not acting in concert with Peaks:

> [Appellant's Counsel]: Detective Bradley, obviously, is the only witness, as a result of this hearing, who had any direct contact with either of the defendants. The arrest team clearly did not and they came after the fact, and their actions were based only upon what Detective Bradley said and nothing else.

---

**4.** Appellant is not represented by same counsel in the instant appeal as he was at trial.

The detective seemed unclear when I tried to probe him on where my client was in relation to Mr. Peaks. He seemed unclear—I think what was clearly established is that they were not together, that the defendants were not together.

Taking his testimony in the light most favorable to the State, [appellant] was in some proximity. The State's theory is that these two gentlemen were working together that day on the 5th of August in a preplanned drug transaction where one would have been the seller and one was the director, but, yet, they're not standing together. I think that came out clearly, although there was a command by one of the defendants to get the attendance of the other. *I think that there is some issue here in terms of probable cause as to whether the State has proven that my client was acting in concert with Mr. Peaks.* Obviously, the detective's testimony is that he was served with drugs by my client. That goes to credibility, if the Court believes that testimony, and I would submit on that, Your Honor.

(Emphasis added.) Thus, that the description of appellant was too vague does not appear to have been raised, much less decided by the trial court. Accordingly, appellant is precluded from raising this issue on appeal.

■ However, even if analyzed on the merits, appellant's claim would still fail. Warrantless arrests are generally covered in § 2–202 of the Criminal Procedure Article, which provides:

(a) A police officer may arrest without a warrant a person who commits or attempts to commit a felony or misdemeanor in the presence or within the view of the police officer.

(b) A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime.

(c) A police officer without a warrant may arrest a person if the police officer has probable cause to believe that a felony

has been committed or attempted and the person has committed or attempted to commit the felony whether or not in presence or within the view of the police officer.

*See also* U.S. Const. amend. IV.[5]

 A warrantless arrest is justified when police act upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably [warrant] the intrusion." *Collins v. State,* 322 Md. 675, 679, 589 A.2d 479 (1991). "Probable cause does not require evidence sufficient to convict a person but only 'a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused is guilty.' " *Gladding Chevrolet v. Fowler,* 264 Md. 499, 505, 287 A.2d 280 (1972).

 "The principal components of a determination of probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to ... probable cause." *Nathan v. State,* 370 Md. 648, 675, 805 A.2d 1086 (2002) (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

In the case *sub judice,* appellant was arrested by the arrest team within minutes after Detective Bradley relayed the information to them. Contrary to appellant's assertion, both detectives testified as to the description given to Detective Rose and the others on the arrest team. During the suppression hearing, Detective Bradley testified that Peaks "wore a light-blue T-shirt and blue jean shorts." The following colloquy demonstrates Detective Bradley's description of Evans as well as the third suspect:

---

**5.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[Appellant's Counsel]: Did you give a physical description of what [appellant] was wearing that day?

[Detective Bradley]: I gave a description of both. To the arrest team?

[Appellant's Counsel]: Yes.

[Detective Bradley]: Yes.

[Appellant's Counsel]: Do you remember what he was wearing that day?

[Detective Bradley]: From my notes, a white T-shirt and shorts.

[Appellant's Counsel]: And how about the unidentified Black male? Do you remember what he was wearing?

[Detective Bradley]: From my notes, I believe a black T-shirt and shorts, blue jean.

Detective Rose corroborated this account when he explained the basis upon which the arrest team targeted appellant and Peaks: "Based on his [Detective Bradley's] clothing description, the two individuals matched exactly as far as the shirt and the pants, the time frame in which it happened—and the proximity to the location where he [Detective Bradley] said it went down."

In *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), the Supreme Court explained, "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause...." The facts of the instant case justify the warrantless arrest of appellant. Clearly, the arresting officers could reasonably infer that appellant and Peaks were the subjects of the drug investigation. Detective Rose testified that the arrest was made within minutes of Detective Bradley's notification and the description matched. This is consistent with our prior decisions that proximity to the crime scene, both temporal and geographic, coupled with an arrestee's description, can be factored in to establish probable cause. *See Moore v. State,* 71 Md.App. 317, 334, 525 A.2d 653

(1987). Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

## II

## JURY INSTRUCTIONS

■ As noted at the outset, a strategy commonly employed in representing a criminal defendant is to point to evidence not offered by the State. Most often, it has been the lack of fingerprint evidence that has been cited. Appellant contends that the trial court went too far in charting a corrective course for the jury as to the significance to attribute to the alleged void in the State's evidence. According to appellant, the net effect of advising the jury that the State has no obligation to produce evidence, which was indisputably available to it, either explicitly or implicitly, relieved the State, in the minds of the jurors, of the burden to establish guilt beyond a reasonable doubt. This diminution of the State's burden, he says, unfairly prejudiced him. The charge to the jury, of which he complains and to which he excepted, instructs:

> During this trial, you have heard testimony of witnesses and may hear argument of counsel that the State did not utilize a specific investigative technique or scientific test. You may consider these facts in deciding whether the State has met its burden of proof. You should consider all of the evidence or lack of evidence in deciding whether a defendant is guilty. However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case. Your responsibility as jurors is to determine whether the State has proven, based on the evidence, the defendants' guilt beyond a reasonable doubt.

The trial judge was prompted to give the above instruction by the cross-examination of Detective Bradley, which inquired as to specific investigative techniques that were not used in this case. In arguing to the jury, counsel stressed the lack of the State's evidence to demonstrate a "cross-check of reliability":

There are very significant facts in this case that create reasonable doubt that my client and [Peaks' Counsel] client were acting in a conspiracy, in concert to distribute drugs. Now, one factor in this case is whether or not there are any cross-checks of reliability. Cross-checks of reliability means that apart from the testimony of one officer who is telling you what he claims happened, are there any other cross-checks of reliability? Well, we know in this case that there is no video of this event, no surveillance tapes of this event. There were questions asked of the detective whether that may have been a possibility, could have broken out a video camera, worn an audio, was it available. I think that could have been done. It wasn't done here. That would have been a cross-check of reliability so that besides the testimony of the detective, you would have something else to cross-check.

Counsel for appellant further argued:

Now, you have a right to assess the credibility of this detective. We understand that. But besides what he said and however you interpret what he said and how he said it and what areas he may have retrieved it from, besides that, there are no other real ways to prove this because the arrest team, the lack of any video surveillance evidence, whatever, none of that, absolutely none of that exists in this case.

Counsel for appellant's codefendant, Peaks, joined in this contention with the following statement during closing argument:

Now, I asked a number of questions, because I can't believe that people would get convicted on a case like this or even charged on a case like this,[6] but I asked—and [appel-

---

6. Although not an issue in this case, we would be remiss if we did not comment on the impropriety of this argument. In *Attorney Grievance Comm'n v. Alison*, 349 Md. 623, 628, 709 A.2d 1212 (1998) (discussing the grant of a motion for sanctions), the Court of Appeals noted the trial court's conclusion that Respondent had violated Maryland Lawyers'

lant's counsel] used the term "cross-checks"—but I asked about certain things because it makes sense to me that if you're going to convict somebody of felonies, of serious crimes, you've got to have some evidence. So how about a videotape or an audiotape? Remember, Detective Bradley said, "Well, you know, we have the stuff, but my particular unit didn't have it. We would have to ask the sergeant, or the sergeant would have to ask somebody else." And I said, "Well, how tough is that?" And he said, "Well, you would have to ask my sergeant," like I'm going to ask the sergeant. Well, we didn't even see the sergeant here, so I don't know. I[t] strikes me that if you've got the equipment, you use the equipment. You have a situation where there are absolutely no scientific tests that implicate my client in any way. There's no audio. There's no video. There's no fingerprints. There is nothing.

At the close of the State's case in chief and outside the presence of the jury, the court reviewed the proposed jury instructions with all parties. At this time, Peaks' counsel objected to the aforementioned instruction, noting that "[he had] not previously seen this instruction given in the Circuit Court for Baltimore City...." The objection, duly noted by the court, was overruled. Appellant's counsel did not note an objection at this point. Following the reading of the jury instructions to the jury, Peaks' counsel noted another objection to the same instruction and appellant's counsel again did not object, as demonstrated by the following colloquy:

---

Rule of Professional Conduct 3.4(e). That Rule, provides, in pertinent part, that a lawyer shall not

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, *or state a personal opinion as to the justness of a cause,* the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.

(Emphasis added).

The argument of appellant's counsel that "I can't believe that people would get convicted in a case like this or even charged on a case like this" violates § 3.4(e) of the Rules of Professional Conduct.

[The Court]: Any exceptions on behalf of defendant Peaks?

[Peaks' Counsel]: Yes, Your Honor. I take exception to the instruction given on specific investigative techniques, which is page 24, and, Your Honor, I would indicate for the reasons previously stated.

[The Court]: Very well. Respectfully, the Court is going to deny the exception at this time. The instruction that the Court gave, which I did present to counsel in the charge conference in writing, is an accurate statement of the law and I do believe the issue has been generated specifically in this case, based on the cross-examination of the State's principal witness, Detective Bradley, and the line of questioning, which included the fact that the detective did not use a tape recorder, did not use a videotape, things that he did not use but he otherwise potentially could have used, this Court believes the instruction was an adequate statement of the law and included those cases that the Court relied on, specifically, *United States v. Mason,* 954 F.2d 219, and *United States v. Saldarriaga,* 204 F.3d 50. I do believe the instruction, taken as a whole, is appropriate under the facts and circumstances of this case, and for those reasons, the Court will deny the exception.

Any further exceptions on behalf of defendant Peaks?

[Peaks' Counsel]: No, Your Honor.

[Appellant's Counsel]: None, Your Honor.

[The Court]: And none on behalf of [appellant]. Okay. Let's go on to closing arguments. Thank you.

Maryland Rule 4–325(e), regarding objections to jury instructions, provides:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in

the instructions, material to the rights of the defendant, despite a failure to object.

We have consistently held that, pursuant to Rule 4–325, failure to request an instruction or object to an instruction constitutes waiver. *See, e.g., Cicoria v. State,* 89 Md.App. 403, 426, 598 A.2d 771 (1991) (failure to request a good faith defense instruction constitutes waiver of that issue); *Sine v. State,* 40 Md.App. 628, 394 A.2d 1206 (1978) (In criminal proceedings, failure to object to a particular instruction constitutes a waiver of that issue on appeal); *Squire v. State,* 32 Md.App. 307, 360 A.2d 443 (1976), *rev'd on other grounds,* 280 Md. 132, 368 A.2d 1019 (1977) (Constitutional rights may be waived at trial, which may preclude consideration of an allegedly erroneous instruction).

■ The record clearly demonstrates that appellant's counsel failed to object to the instruction at issue during the proceedings. In his brief, appellant relies solely on the objection raised by codefendant's counsel. However, a bedrock principle of Maryland law is that a defendant may not rely on an objection made by a codefendant for the purpose of raising an appeal as to that issue. *See, e.g., Hensen v. State,* 133 Md.App. 156, 165, 754 A.2d 1055 (2000) (noting that the trial court's denial of a motion for mistrial was not properly before the court because the appellant neither moved for mistrial nor joined in the codefendant's motion); *Ezenwa v. State,* 82 Md.App. 489, 572 A.2d 1101 (1990) (failing to entertain an issue regarding testimony that was objected to by codefendant, but not by the appellant); *Cooley v. State,* 385 Md. 165, 181 n. 7, 867 A.2d 1065 (2005) ("There is support for the proposition that a defendant who chooses not to join a codefendant's motion cannot himself later appeal on such procedural grounds."). Accordingly, appellant's failure to raise such issue in the trial court precludes us from such consideration on appeal.

Notwithstanding the foregoing, Maryland Rule 4–325(c) provides, in pertinent part: "The court may, and at the request of any party shall, instruct the jury as to the applicable law and

the extent to which the instructions are binding. . . . The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."

■ In determining the appropriateness of a given jury instruction, we " 'must determine whether the requested instruction constitutes a correct statement of the law: whether it is applicable under the facts and circumstances of this case; and whether it has been fairly covered in the instructions given.' " *Stevenson v. State*, 163 Md.App. 691, 694, 882 A.2d 323 (2005) (quoting *Ellison v. State*, 104 Md.App. 655, 660, 657 A.2d 402 (1995)). Here, appellant's argument is that the trial court erred because the instruction was not part of the Maryland Pattern Criminal jury instructions. Appellant correctly notes the strong preference declared in Maryland appellate decisions

> [t]o give instructions in the form, where applicable, of our Maryland Pattern Jury Instructions. Those instructions have been put together by a group of distinguished judges and lawyers who almost amount to a "Who's Who" of the Maryland Bench and Bar. Many of these instructions have been passed upon by our appellate courts.

*Green v. State*, 127 Md.App. 758, 771, 736 A.2d 450 (1999).

No Maryland appellate court has mandated that trial courts *must* use only these instructions. Indeed, the argument made by counsel that the State has failed to employ scientific and other measures at its disposal to sustain its burden is an argument commonly used in criminal cases to raise the specter of reasonable doubt. Remarkably, notwithstanding the frequency of such arguments, our research has uncovered no Maryland decisions considering its propriety. The subliminal effect, protests appellant, is that, as given in the case at hand, it effectively neutered the theory of his defense by emphasizing what the State was not required to produce, thereby undermining instructions to the jury that the State has the burden to prove a defendant's guilt beyond a reasonable doubt. Appellant also claims that the instruction was unnecessary because the court could have simply relied on the

Pattern Jury Instruction that circumstantial evidence was equally competent to direct evidence. Appellant's latter contention is patently without merit. Evidence derived from video and audio surveillance *is* direct evidence and, in that regard, is no different from the evidence of the controlled buy of illicit drugs. Thus, such an instruction would not be helpful to the jury.

■ Regarding appellant's contention that the subject instruction implicitly undermined, in the minds of the members of the jury, the State's burden to prove appellant guilty beyond a reasonable doubt, we believe that the instruction given by the United States District Court for the Second Circuit in *U.S. v. Saldarriaga,* 204 F.3d 50 (2000), cited by the State, is instructive in our analysis:

> And then we heard a lot about the government's techniques. You remember I kept telling defense counsel that was irrelevant, and he kept on talking about techniques nonetheless.

> Now, I kind of chastised him, and the fact that I chastised him, again, had nothing to do with anything. That just shows I never was a very patient person and old age hasn't improved me on that. It is nothing to hold against him that he insisted on making the arguments even though I told him they were irrelevant.

> But now I will tell you why they are irrelevant. The law is clear that the government has no obligation to use any particular techniques. The government's techniques [are] not on trial here. *The government has no obligation to use all the possible techniques that are available to it. The government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand [ ] other things they could have done is wholly irrelevant.*

> *However, if suggesting things that they could have done leads you to think, well, maybe I have a reasonable doubt because I didn't have any evidence on that subject, if that*

*happens, why, then, of course, that is a reasonable doubt like anything else.*

Let me give you as an example. One thing I remember in defendant's summation was that there was no picture of the defendant with these drugs, this package in his hand, and defendant spent a lot of argument showing how simple it would be with all the resources the government had to produce such a picture. And the government on the other hand was very indignant and showed how it would be impossible to produce such a picture.

*They were both wasting their breath on that issue, because if evidence is such that without the picture you would have a reasonable doubt as to whether the government established the defendant[']s identity as the person who did these things, then you have a reasonable doubt and it doesn't make any difference whether the government could have or could not have.* Maybe the government could establish beyond peradventure that it would be impossible to have that picture, it doesn't make any difference. *If you have a reasonable doubt because you didn't get the picture, then you [have] a reasonable doubt.*

It is wholly immaterial whether the government could have done it or couldn't have done it or how many people the government had available that would do it. And so I think I made that clear.

*Id.* at 52.

The Court, in *Saldarriaga,* concluded:

The Court's disputed jury instruction concerning the government's failure to use certain investigative techniques, set forth in full above, may have been somewhat chatty, but it was, in substance, legally sound. *The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged.* The jury correctly was instructed that the

government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged. *See United States v. Sanchez Solis*, 882 F.2d 693, 697 (2d Cir.1989); *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1073–74 (2d Cir.1977); 1 Leonard B. Sand Et Al., Modern Federal Jury Instructions, Instr. 4–4, ¶ 4.01 (1999 ed.), at 4–24 to 4–25. As the jury was instructed properly on this point, defendant's challenge to the District Court's jury charge is unavailing. (Emphasis added).

*Id.* at 52–53.

The instruction at issue is not substantially different in substance from that in *Saldarriaga*. Notably, the court was even more emphatic in that case, because it made the point that, if not seeing the picture created a reasonable doubt, then, *ipso facto*, "you have a reasonable doubt." In both instances, however, the court's instructions made clear that the State was not relieved of its burden to establish guilt beyond a reasonable doubt.

The jury instruction given was a correct statement of the law, was applicable to the facts in the case and was not fairly covered by other instructions given. The robust and vehement closing arguments of counsel regarding the failure to employ audio or video surveillance equipment and the lack of any other investigative or scientific evidence produced by the State warranted giving the instruction. Moreover, it was consistent with Maryland Rule 4–325(c), *i.e.*, it explained to the jury that, contrary to counsel's argument, there is no requirement on the part of the State to produce other types of evidence, as long as the evidence adduced supports a finding of guilt beyond a reasonable doubt.

In sum, we are satisfied that the State's burden in this case was in no way compromised by the admonition that there was no responsibility, in law, for the State to produce evidence simply because it was available, even though such

evidence might have made the discharge of the jury's duty easier. That having been said, we stress that the salutary effect of the instruction is found in the advisement that the absence of such evidence should be factored into the juror's determination of whether the State has shouldered its burden if, *and only if,* the absence of such evidence, itself, creates reasonable doubt. The absence of evidence, available to the State, may not, *ipso facto,* constitute reasonable doubt. The risk is greatest that such an instruction will run afoul of the prohibition against relieving the State of its burden where the instruction is predominant in the overall instructions and its relation to the reasonable doubt standard unclear. Consequently, the preferable practice is for the court's instruction to be promulgated in conjunction with the explication of the State's burden to prove the defendant guilty beyond a reasonable doubt.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**