*Devon Jordan Taylor v. State of Maryland*
No. 2, September Term 2020


**Appeals – Preservation – Substantial Compliance**.  Under Maryland Rule 4-325(e), a party in a criminal trial that wishes to preserve an objection to a jury instruction must (1) object on the record promptly after the court instructs the jury, (2) state the matter to which the party objects, and (3) identify the grounds of the objection.  Defense counsel substantially complied with that rule in objecting to the trial court's anti-CSI effect instruction when counsel objected to the court's "scientific evidence instruction" after the court finished its instructions and when the ground for that objection – the potential effect on the burden of proof standard – was evident from the circumstances.


**Criminal Procedure – Jury Instructions – Anti-CSI Effect Instruction**.  It was an abuse of discretion for the trial court to give an anti-CSI effect instruction – which advised the jury that the prosecution was not required to present scientific evidence as part of its case – preemptively in the absence of over-emphasis by the defense on the lack of such evidence and without reiterating that the prosecution must prove its case beyond a reasonable doubt and that the jury may consider a "lack of evidence" in deciding whether the burden has been satisfied.


**Criminal Procedure – Appeals – Harmless Error Standard**.  Although the evidence presented by the prosecution at trial may have been sufficient to support a guilty verdict, an appellate court could not conclude beyond a reasonable doubt that the erroneous anti-CSI effect instruction had no influence on the jury verdict, particularly when the only evidence at trial tying the defendant to the crime was an eyewitness identification by the victim, who had never seen her assailant before and had viewed him only briefly during the crime, and when the jury initially reported that it was "evenly split" on the question of the defendant's guilt.

IN THE COURT OF APPEALS
OF MARYLAND

No. 2

September Term, 2020

_____

DEVON JORDAN TAYLOR

V.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by McDonald, J.
Biran, J., concurs.
Watts and Booth, JJ., dissent.

_____

Filed: April 23, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal relates to a trial of criminal charges arising out of a home invasion. The victim of the home invasion, when presented with a photo array a month after the incident, identified Petitioner Devon Taylor, who was otherwise a stranger to her, as the person who forced his way into her home. No other evidence linked Mr. Taylor to the crime. He was subsequently indicted in the Circuit Court for Wicomico County on various charges related to the home invasion.

At Mr. Taylor's trial, the trial judge gave what is known as an "anti-CSI effect" jury instruction, which advises the jury that the prosecution need not prove its case through forensic or scientific techniques often featured in police procedural television shows. After initially indicating that it was deadlocked, the jury returned a guilty verdict.

This appeal concerns whether Mr. Taylor preserved an objection to the anti-CSI effect instruction; if so, whether that instruction was appropriately given; and, if the instruction was not appropriate, whether the error was harmless. The Court of Special Appeals held that the objection was preserved and that the trial court abused its discretion when it gave the anti-CSI effect instruction. Nevertheless, it concluded that the error was harmless and affirmed Mr. Taylor's conviction.

For the reasons discussed below, we agree that the instruction given at Mr. Taylor's trial was erroneous. In our view, however, these circumstances do not satisfy the harmless error standard applied by Maryland appellate courts. Accordingly, Mr. Taylor's conviction is reversed.

# I

## Jury Instruction on Absence of Forensic Evidence

The jury instruction at issue in this case is a version of what is sometimes referred to as an anti-CSI effect instruction in that it is intended to dispel a possible juror expectation, drawn from television shows, that the prosecution ordinarily meets its burden of proof by presenting fingerprint, DNA, or other forensic evidence linking a defendant to a crime. In 2007, the Court of Special Appeals issued the first reported Maryland appellate decision on the propriety of an anti-CSI effect instruction in *Evans v. State*, 174 Md. App. 549, *cert. denied*, 400 Md. 648 (2007). Beginning in 2011, this Court has dealt with such an instruction in four decisions. *See Atkins v. State*, 421 Md. 434 (2011); *Stabb v. State*, 423 Md. 454 (2011); *Robinson v. State*, 436 Md. 560 (2014); *Hall v. State*, 437 Md. 534 (2014).[1]

All of these decisions dealt with the same five-sentence instruction. That instruction consists of a key statement that "there is no legal requirement that the State use any specific investigative technique or scientific test to prove its case" bracketed by several introductory sentences, including one telling the jury to consider "all of the evidence or lack of evidence" in reaching its decision, and by a final sentence reiterating that the State must prove guilt beyond a reasonable doubt. As quoted in *Evans*, the instruction was as follows:

---

[1] This instruction is more appropriately labeled an "anti-missing evidence" instruction, as it concerns the absence of a type of evidence and does not relate either to a particular television show or, as we shall see, to an "effect" that is known to exist. It has sometimes been referred to, more generically, as a "no duty" instruction. *E.g.*, *Stabb*, 423 Md. at 456. Although the *Evans* and *Atkins* majority opinions did not refer to this instruction as an "anti-CSI effect instruction," the concurring opinion in *Atkins* used that label and subsequent decisions have adopted it as a shorthand. For ease of reference to those decisions, we will use that label in this opinion.

During this trial, you have heard testimony of witnesses and may hear argument of counsel that the State did not utilize a specific investigative technique or scientific test. You may consider these facts in deciding whether the State has met its burden of proof. You should consider all of the evidence or lack of evidence in deciding whether a defendant is guilty. *However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case.* Your responsibility as jurors is to determine whether the State has proven, based on the evidence, the defendants' guilt beyond a reasonable doubt.

174 Md. App. at 562 (emphasis added). The anti-CSI effect instruction given in each of the other cases described in this section of this opinion was the same, in some cases with very minor differences in wording.

The *Evans* decision flashed what might be characterized as a yellow caution light concerning such an instruction. While this Court never quite turned that light red in its subsequent decisions, it has come close to doing so.[2]

*Evans*

In *Evans*, the Court of Special Appeals opined that an anti-CSI effect instruction that also reiterated the requirement that the prosecution prove its case beyond a reasonable doubt could be permissible in some circumstances.[3] With respect to the case before it, the court pointed to defense counsel's "robust and vehement closing arguments" about the State's failure to employ audio or video surveillance equipment and the lack of any other

---

[2] Applying that case law in several reported decisions, the Court of Special Appeals has reversed convictions resulting from trials at which an anti-CSI effect instruction was given. *Carrero-Vasquez v. State*, 210 Md. App. 504 (2013); *Samba v. State*, 206 Md. App. 508 (2012); *Allen v. State*, 204 Md. App. 701 (2012).

[3] The intermediate appellate court acknowledged that its discussion of the instruction was dicta because Evans' counsel had not objected at all to the instruction and so had not preserved the issue for that appeal. A co-defendant not involved in the appeal had appropriately objected to the instruction, but the Court of Special Appeals held that the co-defendant's objection did not preserve the issue for Evans. 174 Md. App. at 562-66.

3

investigative or scientific evidence and to the trial court's legally "correct" explanation that there is no requirement that the State present particular types of evidence, "as long as the evidence adduced supports a finding of guilt beyond a reasonable doubt." 174 Md. App. at 570. Under these circumstances, the *Evans* court was satisfied that the anti-CSI effect instruction in the case before it had not compromised the concept of reasonable doubt. However, the court cautioned that "such an instruction will run afoul of the prohibition against relieving the State of its burden [of proof beyond a reasonable doubt] where the instruction is predominant in the overall instructions and its relation to the reasonable doubt standard unclear." *Id*. at 570-71.

In other jurisdictions, the instruction given in *Evans* – or a very similar one – has been approved, before and after the *Evans* decision, both as a pattern instruction and as given in particular trials.[4] The common issue in those appeals, as in *Evans*, has been whether the instruction has the effect of reducing the prosecution's burden of proof.[5]

---

[4] *See, e.g.*, Federal Jury Practice and Instructions, Third Circuit Manual of Model Jury Instructions – Criminal 4.14 (2020); *see also United States v. Holloway*, 774 Fed. Appx. 147, 148 (4th Cir. 2019); *United States v. Brown*, 658 Fed. Appx. 100, 104-05 (3d Cir. 2016); *United States v. Gorny*, 655 Fed. Appx. 920, 922-24 (3d Cir. 2016); *United States v. Lassend*, 545 Fed. Appx. 3, 4-5 (1st Cir. 2013); *United States v. Johnson*, 479 Fed. Appx. 811, 816-18 (10th Cir. 2012); *United States v. Brown*, 474 Fed. Appx. 945, 946-47 (4th Cir. 2012); *United States v. Cox*, 627 F.3d 1083, 1086 (8th Cir. 2010); *United States v. Cota-Meza*, 367 F.3d 1218, 1223 (10th Cir. 2004); *United States v. Saldarriaga*, 204 F.3d 50 (2d Cir. 2000); *United States v. Zapata*, 164 F.3d 620 (2d Cir. 1998); *United States v. Temple*, 122 F.3d 1064 (4th Cir. 1997); *United States v. Walker*, 66 F.3d 318 (4th Cir. 1995); *United States v. Mason*, 954 F.2d 219, 222 (4th Cir.), *cert. denied*, 504 U.S. 925 (1992); *United States v. Corcoran*, 855 F. Supp. 1359, 1374-75 (E.D.N.Y. 1994).

[5] *See, e.g.*, Federal Jury Practice and Instructions, Third Circuit Manual of Model Jury Instructions – Criminal 4.14, C*omment* (2020). The *Evans* court relied on the Second Circuit's 2000 decision in *Saldarriaga*. At the trial in that case, the trial judge had given a "somewhat chatty" anti-CSI effect instruction that also told the jury to base its decision on the evidence "or lack of evidence" and that stressed that the prosecution had the burden of proving its case beyond a reasonable doubt. *Saldarriaga*, 204 F.3d at 52-53. The *Evans*

*Atkins*

This Court first addressed the propriety of this anti-CSI effect instruction in *Atkins*. In that case, the defendant was involved in an altercation with several other people and was charged with an assault that allegedly involved a knife. The defendant testified that he had used a small pocketknife in self-defense. Police later recovered a large knife from the defendant's bedroom while executing a search warrant. The prosecution argued that the large knife was the actual weapon used by the defendant, and that its use negated the claim that he acted in self-defense and indicated that he was the aggressor. Defense cross-examination of a police detective at trial established that no forensic evidence linked the large knife to the alleged assault. When the trial court charged the jury, it included the same anti-CSI effect instruction that had been given at the trial in *Evans*, as outlined above. *Atkins*, 421 Md. at 441-42. The defendant was convicted.

On appeal, this Court reversed the conviction on the grounds that, under the circumstances, the anti-CSI effect instruction had improperly addressed the weight of the evidence, thereby undermining the defendant's legitimate defense that the State had not linked the large knife to the crime and invading the province of the jury. 421 Md. at 451-54. Distinguishing the events of the trial from those in *Evans*, the *Atkins* Court noted, that, in contrast to the theories advanced by the prosecution in *Evans*, the State's theory that the defendant had used the large knife was speculative and uncorroborated by other evidence. In addition, in contrast to the "robust and vehement" defense closing argument about the

court found that the *Saldarriaga* instruction was "not substantially different in substance" from the one at issue in the case before it. 174 Md. App. at 570.

5

lack of forensic evidence in *Evans*, defense counsel in *Atkins* had reasonably elicited the lack of forensic evidence related to the knife in cross-examination, and had neither distorted the law nor overstated the State's burden of proof.  *Id.* at 450.

Accordingly, the Court reversed the conviction as violative of the defendant's right to a fair trial under the Sixth Amendment of the United States Constitution and Articles 21 and 23 of the Maryland Declaration of Rights.  The Court cautioned that it was not holding that such an instruction could never be given.  Rather, a neutral instruction that holds the prosecution to its continuing burden to prove guilt beyond a reasonable doubt – as the *Evans* court had indicated – could be appropriate in certain circumstances.  421 Md. at 454-55.[6]

A concurring opinion joined by three judges provided background on the perceived "CSI effect" of police television dramas – that jurors who watch television might have unrealistic expectations as to the availability and results of forensic investigative techniques – and on the efforts to counter that perceived effect, including development of anti-CSI effect instructions.  421 Md. at 456-73 (Harrell, J., concurring).  The concurring opinion emphasized that a curative anti-CSI effect instruction could be appropriate if a defense argument went beyond arguing a lack of forensic evidence to suggesting to the

---

[6] The Court advised that the "better practice" is for a trial judge to refrain from commenting on inferences to be drawn by the jury.  421 Md. at 454 n.8 ("While it would be proper to tell the jury that the State may prove its case by whatever means it chooses, we caution against commenting in the negative, i.e., what the State does not have to do, as this practice, considering the context in which the instruction is given, runs the risk of relieving the State of its burden.").

jury that the prosecution was required to use specific techniques to prove its case. *Id.* at 473.

*Stabb*

The Court reiterated its analysis a few months later in *Stabb* and held that the anti-CSI effect instruction given at the trial in that case violated the defendant's constitutional right to a fair trial. *Stabb* concerned an alleged sexual assault of a seven-year old girl. The defense cross-examined a social worker who had interviewed the girl about the social worker's decision not to refer the girl for a Sexual Assault Forensics Exam ("SAFE"). During a jury instruction conference of the trial judge and counsel, the prosecution proposed the anti-CSI effect instruction described above. Defense counsel objected to the instruction as "burden shifting" and asserted that it would be appropriate only if the defense argument was "robust or vehement" on a need for the prosecution to present forensic evidence. The trial judge gave the anti-CSI effect instruction prior to closing arguments. The jury returned a guilty verdict. 423 Md. at 462-75.

This Court reversed the conviction. The Court reiterated that, although an anti-CSI effect instruction is "not improper per se," the trial court had abused its discretion in giving such an instruction preemptively. 423 Md. at 462-63. First, the Court reviewed recent scholarly research as to whether the supposed "CSI effect" actually existed – *i.e.*, whether jurors are actually influenced by television to believe incorrectly that the prosecution must present forensic evidence to meet its burden of proof. Ultimately, the Court concluded that the research was inconsistent and inconclusive. *Id.* at 467-70.

The Court then observed that the "missing" forensic evidence in *Stabb* (DNA or fingerprints that would have established that the defendant had inappropriately touched the girl) was not as critical to the prosecution as the missing forensic evidence in *Atkins* that might have linked the knife to the assault in that case. Nevertheless, even though the defense had pointed out other deficiencies in the State's case, the absence of corroborating scientific evidence was "an integral part of the defense theories." 423 Md. at 471.

The Court found that it was problematic for the trial court to give a preemptive anti-CSI effect instruction before the defense counsel's closing argument. The Court noted that defense counsel did not place "undue emphasis" or "'harp' impermissibly" on the lack of scientific evidence in arguing that the girl's story was not corroborated. 423 Md. at 471. The Court observed that the defense argued that the prosecution had failed to meet its burden in a number of ways, only one of which was the failure to perform a SAFE exam. The Court concluded that, in giving the anti-CSI effect instruction, the trial judge "directed effectively the jurors" not to consider the absence of corroborating physical evidence, and, by doing so, had invaded the province of the jury. *Id.* at 472. The Court warned that use of the instruction is "fraught with the potential for reversible error" and that it is best employed as a curative instruction to correct "pre-existing overreaching by the defense." *Id*. at 473.

*Robinson*

Several years after the *Atkins* and *Stabb* decisions, the Court repeated much of the analysis from those decisions in *Robinson*. It again reversed a conviction from a trial at which an anti-CSI effect instruction had been given – the same instruction described above.

8

436 Md. at 563, 568, 574. The trial had taken place in 2011 just a month before the *Atkins* decision was issued. The Court again expressed some skepticism as to whether a "CSI effect" in fact exists and reiterated the guidance from the *Stabb* decision that, in the absence of certainty on that score, an anti-CSI effect instruction should not be given preemptively, but only as a curative instruction. *Id.* at 576-79.[7]

*Hall*

*Hall* arose out of a trial in early 2010, before the *Atkins* or *Stabb* decisions, of charges related to a carjacking. The prosecution requested that the court give the anti-CSI effect instruction described above, and the trial court did so. 437 Md. at 538. Defense counsel objected to the instruction, stating as grounds that the instruction intimated that "it's okay if the State doesn't have forensic or physical or scientific evidence."

On appeal, the State conceded that, under *Atkins* and *Stabb*, the trial court abused its discretion in giving that instruction. This Court agreed. Stating that a trial court abuses its discretion in giving an anti-CSI effect instruction "where the defendant does not misstate the law," the Court concluded that defense counsel had not misstated the law and that the trial court had abused its discretion in giving the instruction. 437 Md. at 540. But the Court found that the error was harmless – a holding that we shall discuss later in this opinion. *See* Part III.C of this opinion.

---

[7] Two judges dissented, reasoning that the instruction in *Robinson*, taken in context, functioned as a curative instruction when defense counsel's opening statement recited a litany of scientific evidence that the prosecution would not present and equated the lack of such evidence with an absence of proof beyond a reasonable doubt. 436 Md. at 581-84 (Watts, J., dissenting).

9

*Summary*

The Court has never absolutely forbidden the use of an anti-CSI effect instruction and has been careful to say that such an instruction is "not improper per se." Indeed, both this Court and the Court of Special Appeals have acknowledged that the instruction is a correct statement of the law, as the prosecution is ordinarily not required to make its case by any particular type of evidence. *Atkins*, 421 Md. at 447; *Evans*, 174 Md. App. at 570. A related instruction given at most trials states that circumstantial evidence is just as good as direct evidence.[8]

Still, the Court's decisions reflect a skepticism about the existence of a "CSI effect" and that question raises a concern whether the instruction is necessary – *i.e.*, whether it is a solution in search of a problem. More importantly, what matters is whether the content of an anti-CSI effect instruction, viewed in the context of the evidence at trial, the other instructions, and the parties' arguments, has the effect of undermining or "neutering" the critical (and constitutional) principle that the prosecution always bears the burden of proof beyond a reasonable doubt. When an anti-CSI effect instruction has that effect, it violates the defendant's right to a fair trial, and the trial court abuses its discretion in giving the instruction.

---

[8] Maryland State Bar Association, Maryland Criminal Pattern Jury Instructions, MPJI-Cr 3.01 (2d ed. 2012) ("The law makes no distinction between the weight to be given to either direct or circumstantial evidence. No greater degree of certainty is required of circumstantial than of direct evidence."); 1 David E. Aaronson, Maryland Criminal Jury Instructions and Commentary (2018) §2.02 ("A conviction may rest on circumstantial evidence alone, on direct evidence alone, or on a combination of circumstantial and direct evidence. No greater degree of certainty is required when the evidence is circumstantial than when it is direct.").

This Court's prior cases have held that an anti-CSI effect instruction crosses that line when the trial court gives it preemptively before there is any "defense overreaching" that suggests to the jury that the prosecution is required to present forensic evidence to bear its burden of proof.[9]  Thus, the Court has viewed such an instruction as most appropriately given as a curative instruction.  In addition, because of the perceived danger that the instruction could minimize the prosecution's burden of proof, any such instruction must also refer to the prosecution's continuing burden to prove its case beyond a reasonable doubt.

## II

### Background

This case arose from a home invasion of the apartment of a college student in Salisbury on June 13, 2008.  On August 18, 2008, the grand jury in the Circuit Court for Wicomico County charged Mr. Taylor with first, third, and fourth-degree burglary, attempted second-degree rape, robbery, second-degree assault, indecent exposure, malicious destruction of property worth less than $500, and theft of property worth less than $100.

Mr. Taylor's trial took place in the Circuit Court on December 4, 2008.  At the outset of the trial, the State dismissed the attempted second-degree rape charge.  During the trial,

---

[9] This can be a problematic line for a trial court to draw.  As a matter in the realm of human endeavor, a prosecution case is never perfect.  It is a common, and fair, defense argument that something is missing from it.  Whether that means there is a reasonable doubt is up to the jury.  But it can be a subtle and difficult thing for a court to decide when this common defense argument amounts to "overreaching."

the State presented the testimony of the victim concerning the invasion of her home and the testimony of three police officers who investigated the incident. Mr. Taylor elected not to testify and did not call any witnesses or introduce any exhibits.

## A. *The Trial*

### *The Night of the Home Invasion*

During 2008, the victim was a student at Salisbury University and lived in a ground floor apartment in Salisbury. She testified that, on June 13, 2008, at approximately 1:00 a.m., she was about to go to bed and had just turned off the lights when she heard some knocks on her front door. She turned on the living room light and an outside light. She looked through a peephole in the door, but she did not see anyone. She then opened the front door "just a crack." She leaned out the door to see a naked man to her left masturbating. Shocked, she immediately shut the door and, despite the man's attempt to push his way in, was able to lock it. She called 911. As the man began to bang on the door, she remained on the line with the dispatcher and retrieved a knife from the kitchen.

According to the victim, the man eventually managed to push the door in, breaking the locks, and entered the apartment. When he entered the apartment, the man was wearing only a gray T-shirt around his neck. He pulled the T-shirt over the lower part of his face for a few seconds, but then let go of it, revealing his face. The man did not say anything.

The victim testified that, once inside the apartment, the man alternately charged at her and retreated while she screamed, ordering him to get out and warning him that the police were on their way. She said that, at one point, the man "cornered" her in the doorway to her bedroom. He came towards her and grabbed the arm in which she held the knife.

She was able to wrest her arm free and believed that the knife "made contact" with the man without cutting him. The man then rifled through her book bag and surveyed other items on the kitchen counter and a coffee table. He ultimately left the apartment with her purse and wallet.

The victim testified that, although she did not know the man, she could see his face clearly in the bright light of her living room (and possibly kitchen light) after the T-shirt fell away from his face. She described the man as having a chubby face, with very prominent cheekbones, "sunken in" eyes, and light facial hair of a couple days' growth.

The police arrived shortly after the man left the apartment. In her testimony, the victim estimated that the entire encounter lasted three or four minutes. The 911 call, which began shortly before the man entered the apartment and ended after the police arrived, lasted one minute and twenty seconds. A recording of the 911 call was introduced into evidence and played for the jury.

The police officer who first responded to the 911 call testified that he observed "approximately eight golf ball sized dents" in the front door of the apartment and that it appeared that the dead bolt on the door had been separated from the door by an impact from the outside. The officer observed the knife that had been wielded by the victim, but he did not process it as evidence or take it for testing because, according to the officer, the victim did not tell him that it had touched her assailant. The officer observed cigarette butts near the front stoop of the apartment, but he did not take them as evidence because the victim herself was a smoker. The officer had been told that other officers saw a T-shirt

and sneakers in a field near the apartment, but he did not believe that those items had been collected as evidence.

*Subsequent Investigation and Identification of Mr. Taylor*

The detective who was assigned to be the lead investigator in the case testified that he learned that the apartment door had not been tested for fingerprints before it was replaced by a new door shortly after the home invasion. Later on the day of the incident, he located the door elsewhere in the apartment complex, confirmed that there were several golf ball sized dents in it, and dusted the handle and upper part of the door for fingerprints without success. He said that he did not take the victim's knife because it was his understanding that the assailant had not touched it. In addition, he also testified that the T-shirt and shoes seen in the field were not collected.

Approximately one month after the incident, another detective with the Salisbury Police Department presented the victim with a photo array and asked her whether the man who had exposed himself to her and robbed her appeared in any of the photographs. She selected Mr. Taylor's photograph within a few seconds and told the detective that she was positive that he was the person who had invaded her home. In her testimony at trial, the victim again identified Mr. Taylor as the man who had invaded her apartment, but she noted that he looked a little different in that his hair had grown out, his facial hair was thicker, and he appeared to have lost some weight.

*Jury Instructions, Closing Argument, and Deliberations*

The trial testimony was completed during the morning of the trial, and the jury was dismissed for a lunch recess. While the jury was out of the courtroom, the trial judge and

14

counsel briefly discussed the jury instructions that the judge would give prior to closing arguments.  At the end of that discussion, the trial judge advised counsel that "I will probably give an instruction, which I have given in the past because I believe it has been generated by the evidence, and perhaps will be argued by [defense counsel] concerning scientific evidence.  Or lack thereof."  Neither Mr. Taylor nor the State responded to the judge's statement.

That afternoon, after the jury had returned, the court instructed the jury.  After providing general instructions on the burden of proof, presumption of innocence, the difference between evidence and argument, the right of the defendant to remain silent, and general considerations for evaluating testimony, the court specifically addressed eyewitness identification testimony:

> You have heard evidence that prior to this trial a witness identified the Defendant by what's known as photographic array.  It is for you to determine the reliability of any identification and give it the weight you believe it deserves.  The identification of a defendant or of the defendant by a single eyewitness as the person who committed the crime, if believed beyond a reasonable doubt, can be enough evidence to convict the Defendant.
>
> You must, however, examine the identification with great care.

Immediately following that instruction, the court gave its "scientific evidence" instruction which, in its entirety, was as follows:

> There is no legal requirement that the State offer scientific evidence as a part of its case, such as DNA, fingerprinting, blood typing, fiber analysis, hair follicle analysis, or anything of that nature.

As is evident, unlike the instruction given in the case law outlined in Part I of this opinion, this was a briefer version of an anti-CSI effect instruction that lacked the introductory sentences that tell the jury to base its decision on the evidence "or lack of evidence" and

15

the concluding sentence relating the instruction to the prosecution's burden of proof beyond a reasonable doubt. This instruction also gave greater detail as to the types of evidence that the State is *not* required to present.

After giving its anti-CSI effect instruction, the court discussed the concept of intent, as distinct from motive, and finally reviewed the elements of each of the charges against Mr. Taylor.

At the conclusion of the court's instructions, the trial judge asked counsel whether they had any "additions or exceptions." Defense counsel excepted to the court's anti-CSI effect instruction, stating "Your Honor, I would just except to the Court's scientific evidence instruction."[10] The court replied "All right" and turned to the prosecutor, who then excepted to the instruction concerning the elements of the robbery charge. Although the trial judge did not explicitly deny either party's exception, he effectively did so in not providing any further instruction to the jury prior to closing argument.

In closing argument, defense counsel stressed that the only evidence linking Mr. Taylor to the incident was the identification made by the victim, who had only a little more than a minute to observe her assailant. While acknowledging that there was no requirement that the State present DNA evidence, defense counsel observed that there was no evidence apart from the identification to corroborate that Mr. Taylor was involved in the crime. In rebuttal argument, the prosecutor also briefly alluded to the absence of DNA and

_____

[10] The anti-CSI effect instruction was the only instance in which the trial court referred to "scientific evidence" in its instructions.

16

fingerprint evidence, arguing that any such evidence was unlikely to be found as a result of the incident.

After deliberating for an hour, the jury sent the court a note stating that it was "evenly split" as to whether to find Mr. Taylor guilty or not guilty and asking whether a hung jury would be acceptable. In response, the court gave a version of a modified *Allen* charge[11] without directly answering whether a hung jury would be acceptable. It sent the jury back to the jury room for further deliberations.

The jury returned approximately two hours later with a verdict finding Mr. Taylor guilty of all of the charges against him – burglary in the first, third, and fourth degrees, robbery, second-degree assault, indecent exposure, malicious destruction of property worth less than $500, and theft of property worth less than $100.

*Sentencing*

Before it dismissed the jury, the court immediately sentenced Mr. Taylor to 17 years imprisonment for first-degree burglary, 10 years for robbery, and three years for indecent exposure. The sentences were to run consecutively, for a total of 30 years imprisonment. The court merged the remaining convictions for purposes of sentencing.[12] The court

---

[11] A modified *Allen* charge, as approved by this Court, encourages jurors who have indicated a lack of unanimity to continue to deliberate and reconsider their respective positions in light of the views of other jurors while not surrendering individual honest convictions. *See Armacost v. Davis*, 462 Md. 504, 519-20 n.9 (2019). The trial court's modified *Allen* charge in this case is set forth verbatim in the opinion of the Court of Special Appeals. 236 Md. App. 397, 445-46 (2018).

[12] The court merged the convictions on the two lesser burglary counts into the conviction for first-degree burglary, and merged the convictions for assault, theft, and malicious destruction of property into the robbery conviction.

advised Mr. Taylor of his right to pursue an appeal to the Court of Special Appeals and his right to seek review of his sentence by a three-judge panel of the Circuit Court. Mr. Taylor's attorney advised him on the record that he would "file the appropriate paperwork on [his] behalf."

### B.    *The Belated Direct Appeal*

No appeal was timely filed on Mr. Taylor's behalf. Almost eight years later, in June 2016, Mr. Taylor filed a *pro se* petition for postconviction relief, alleging that his trial attorney had provided ineffective assistance of counsel by failing to file a notice of appeal and an application for review of his sentence by a three-judge panel. The State agreed that Mr. Taylor was entitled to relief, and he was permitted to pursue a belated appeal to the Court of Special Appeals.

The Court of Special Appeals affirmed Mr. Taylor's convictions. *Taylor v. State*, 236 Md. App. 397 (2018). Among the issues raised by Mr. Taylor in the intermediate appellate court was whether the trial court had erred by giving its anti-CSI effect instruction.[13] The Court of Special Appeals concluded that the trial court had erred in giving the anti-CSI effect instruction, but that the error was harmless.

Mr. Taylor filed a petition for a writ of *certiorari* on several issues, including the anti-CSI effect instruction. Pertinent to that issue, the State filed a conditional cross-

---

[13] Before the Court of Special Appeals, Mr. Taylor also argued that the trial court had coerced a verdict in giving its version of the modified *Allen* charge and that the trial court had impermissibly considered juvenile matters and unproven charges in fashioning a sentence more severe than that recommended under the State's sentencing guidelines. 236 Md. App. at 444-56. Neither issue is before us.

petition for *certiorari*, raising the questions whether Mr. Taylor had adequately preserved the issue in the trial court and whether it was appropriate for the Court of Special Appeals to consider post-trial case law on the propriety of an anti-CSI effect instruction in deciding the issue in Mr. Taylor's case. We granted Mr. Taylor's petition with respect to the anti-CSI effect instruction, as well as the State's cross-petition.[14]

## III

## Discussion

Rearranging the issues raised by the parties in a logical order of decision, we address the following questions:

    1. Whether Mr. Taylor preserved his objection to the anti-CSI effect instruction.

---

[14] This appeal found its way to this Court by a more convoluted route than is usually the case. Mr. Taylor filed his initial petition for a writ of *certiorari* in May 2018. The Court granted that petition and the State's cross-petition in July 2018, but also added its own question whether there was appellate jurisdiction to consider Mr. Taylor's belated appeal. Two weeks later, the Court dismissed the petition as improvidently granted and also denied a subsequent motion for reconsideration, with two judges opining in dissent that there was no appellate jurisdiction because the belated appeal had been granted by the circuit court by a "consent order" in which Mr. Taylor waived his right to pursue any further postconviction relief, without the circuit court holding a hearing or ruling on the merits of the postconviction petition, as required by the Maryland Rules.

This Court subsequently held, in *Rosales v. State*, 463 Md. 552 (2019), that a failure to file an appeal within the time limit set forth in the Maryland Rules, while ordinarily a basis for dismissal of the appeal, does not divest an appellate court of jurisdiction to hear the appeal. Subsequently, Mr. Taylor sought to re-open postconviction proceedings in the Circuit Court. In December 2019, the Circuit Court re-opened the postconviction proceedings and found that ineffective assistance of counsel had deprived Mr. Taylor of the opportunity to have this Court consider his petition for *certiorari*. As relief, it authorized him to file a belated petition for writ of *certiorari* with this Court. In March 2020, we granted Mr. Taylor's new petition to the extent indicated in the text, as well as the State's cross-petition.

2. Whether, under the law that applies in this belated appeal, the trial court abused its discretion when it gave the anti-CSI effect instruction.

3. If the trial court erred in giving the anti-CSI effect instruction, whether that error was harmless.

For the reasons set forth below, we hold that: (1) Mr. Taylor sufficiently preserved his objection to the anti-CSI effect instruction; (2) the trial court abused its discretion in giving its anti-CSI effect instruction in the circumstances of this case; and (3) that abuse of discretion was not a harmless error.

## A.    *Preservation*

The Maryland Rules require that a party make a contemporaneous objection to a jury instruction to preserve an argument that the instruction was erroneous.  In particular, Rule 4-325(e) states, in pertinent part, that "[n]o party may assign as error the giving [of] … an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection."[15]  *See also* Maryland Rule 2-520(e) (stating similar standard for objections to jury instructions in civil jury trials).  The purpose of the rule is to give the trial court an opportunity to correct its charge to the jury if it believes a correction is necessary in light of the objection.  *Gore v. State*, 309 Md. 203, 208-09 (1987).  This Court has recognized

---

[15] The rule applicable to criminal trials also provides that, even if there is no objection, an appellate court may "take cognizance of any plain error in the instructions, material to the rights of the defendant."  Maryland Rule 4-325(e).  Because we hold that Mr. Taylor's objection was preserved, we need not consider whether plain error review would be appropriate in this case.

that a cryptic objection "substantially complies" with the last requirement of the rule – that the objection states the grounds of the objection – if "the ground for objection is apparent from the record." *Id*. at 209;[16] *see also Watts v. State*, 457 Md. 419, 426 (2018).

At the same time, if an objection is made to a jury instruction, and no grounds are stated, the trial judge is not required to ask the grounds for the objection. In addition, if the trial judge overrules a jury instruction objection that lacks a stated basis, substantial compliance with Rule 4-325(e) is not presumed on appeal. A jury instruction exception without a stated basis merely opens the door to the question whether the objection substantially complied with the rule – a requirement that is only satisfied if the trial judge can reasonably infer the grounds for the objection based on the overall context in which the objection was made.

The State asserts that Mr. Taylor failed to adequately preserve an objection to the anti-CSI effect instruction for appellate review because, although Taylor's counsel stated an exception, he did not specify the grounds of the objection and it was not otherwise apparent under the circumstances. Thus, the State concludes, that objection did not strictly comply – or even "substantially comply" – with that requirement of Rule 4-325(e).

As recounted above, during a recess in the trial, the trial judge advised counsel that, in light of the lack of "scientific evidence" in the case and the likelihood that defense

---

[16] The *Gore* decision also recognized an exception to the requirement that the objection be made "after the court instructs the jury" if renewal of a previously-expressed objection would be futile or useless. 309 Md. at 209. There is no need to consider that exception here as Mr. Taylor's counsel did register his objection after the court instructed the jury.

counsel would focus on that fact in closing argument, he would *sua sponte* include an instruction on that subject that he had given in other cases. The trial judge did not preview the precise language he had in mind. Neither counsel reacted to that information at that time. The trial judge followed through by giving his version of an anti-CSI effect instruction, which advised the jury that the State was not required to "offer scientific evidence" to prove its case – the only mention of "scientific evidence" in the instructions. At the conclusion of the instructions, defense counsel excepted to the "scientific evidence instruction" without further elaboration, and the trial judge responded "All right."

There is no question that the objection registered by defense counsel was timely – it came immediately after the court instructed the jury – and that the objection stated distinctly the matter to which the objection pertained – the anti-CSI effect instruction that referred to "scientific evidence." Mr. Taylor concedes that his counsel did not state specific "grounds" for the objection. Thus, the issue is whether the ground for the objection was apparent from the record such that the purpose of Rule 4-325(e) was served – *i.e.*, whether the trial court had sufficient notice and an opportunity to correct its instructions in light of the objection.

This Court recently analyzed a similar issue in *Watts*. In that case, defense counsel made a timely objection to the trial court's instruction concerning an assault charge. Defense counsel stated that there might not be a unanimous verdict on that count as "six jurors could go with one theory, six could go with another." The court responded by saying "Okay. All right. Thank you. ... Exceptions noted." 457 Md. at 424-25. This Court held that the objection substantially complied with Rule 4-325(e), observing that the trial judge

22

had noted the objection and had not expressed any lack of clarity about the nature of the objection. *Id.* at 429. The Court acknowledged "that there is 'some play in the joints' in determining whether an issue has been preserved" and stated that "[i]f the record reflects that the trial court understands the objection and, upon understanding the objection, rejects it, this Court will deem the issue preserved for appellate review." *Id.* at 428; *see also Sergeant Co. v. Pickett*, 283 Md. 284, 290 (1978) (applying similar standard regarding objection to jury instruction in civil jury trial and finding substantial compliance with that rule "[o]nce the trial court had signified that it comprehended the precise point being asserted, but nevertheless rejected it out-of-hand").[17]

As to whether the trial court in Mr. Taylor's case would have understood the basis for an objection to an anti-CSI effect instruction, there is a strong presumption that trial judges know the law. *State v. Chaney*, 375 Md. 168, 181 (2003). At the time of the trial of Mr. Taylor in 2008, and presumably at the time the same trial judge had given the anti-CSI effect instruction in earlier trials, the only Maryland law on the propriety of such an instruction was the opinion of the Court of Special Appeals in *Evans*. As outlined above, in that case, the intermediate appellate court had stressed that an anti-CSI effect instruction should be given in conjunction with a reference to the prosecution's burden of proof

---

[17] In *Pickett*, the Court held that a party had preserved an objection to the absence of an instruction on the "avoidable consequences" rule of damages in contract actions when counsel simply stated "[a]nd [proposed jury instruction number] ten, unavoidable (sic) consequences." The Court reasoned that the reference to "unavoidable consequences," coupled with a reading of the proffered instruction, was sufficient to identify for the trial judge "the nature and ground of the objection." 283 Md. at 289.

23

beyond a reasonable doubt and cautioned that a lack of clarity on that score would effectively relieve the State of its burden of proof.

Apart from the presumption that a trial judge knows the law, it is self-evident that an instruction about what evidence the State need not present relates to the burden of proof borne by the prosecution and to the evidence that may support a conclusion that the burden has been satisfied. It is also evident that the trial judge in Mr. Taylor's case understood that relationship. When the trial judge first informed counsel that he would *sua sponte* give an anti-CSI effect instruction, he explained that he felt it appropriate in response to an anticipated defense argument that the prosecution had failed to meet its burden due to "scientific evidence … or the lack thereof." Moreover, the instruction followed an instruction about whether the identification of Mr. Taylor by the victim could alone satisfy the reasonable doubt standard. Accordingly, the trial judge would have understood that a defense objection to the anti-CSI effect instruction concerned whether it undermined the reasonable doubt standard. Finally, the trial judge expressed no confusion about the nature of the defense objection, but simply said "All right." As in *Watts*, "[i]f the trial judge lacked clarity about counsel's objection, the record does not reflect it." 457 Md. at 429.

Here, the grounds for defense counsel's objection to the anti-CSI effect instruction were apparent to the trial court and, given that defense counsel satisfied the other requirements of Maryland Rule 4-325(e), the objection substantially complied with that rule. We thus agree with the Court of Special Appeals that Mr. Taylor's objection to the instruction was preserved for appellate review.

**B.** *Whether the Anti-CSI Effect Instruction was an Abuse of Discretion*

An appellate court reviews a trial court's decision to give a particular jury instruction for abuse of discretion. *Hall*, 437 Md. at 539. A trial court abuses its discretion if it commits an error of law in giving an instruction. *Harris v. State*, 458 Md. 370, 406 (2018).

The version of an anti-CSI effect instruction given in Mr. Taylor's case was deficient in comparison to the instruction given in the cases outlined in Part I of this opinion. The instruction given in all of those cases consisted of a sentence reciting that the State did not have to prove its case through specific scientific techniques, bracketed by several other sentences that emphasized that the State bore the burden of proof beyond a reasonable doubt and that the jury should take account of the evidence or "lack of evidence" in deciding whether the State met that burden. In contrast, the anti-CSI effect instruction in this case consisted of a single sentence advising the jury that the State was not required to offer scientific evidence and included a list of examples of evidence that the State need not present.

This Court has warned that, in many circumstances, even the more elaborate instruction used in the cases described in Part I of this opinion may compromise communication of the concept of reasonable doubt. Accordingly, the Court has admonished that an anti-CSI effect instruction should be used only as a curative instruction in response to defense "overreaching." The instruction in this case was preemptive, not curative. In this case, the trial judge announced his intention to give an anti-CSI effect

instruction *sua sponte* in *anticipation* of a potential defense argument, not in response to an argument already made.

In fact, there was no need for a curative instruction. At Mr. Taylor's trial, defense counsel neither misstated the law nor overemphasized the lack of forensic evidence. In his opening and closing statements, defense counsel briefly pointed to the lack of forensic evidence to spotlight that the lone evidence tying Mr. Taylor to the incident was the victim's identification of him as the assailant whom she had never seen before and whom she had observed only briefly on the night in question – an identification made well after that encounter (one month later in the case of the photo array and several months later in the case of the in-court identification). Similarly, defense counsel's cross-examination of the law enforcement officers who testified at trial simply explored the other tangible evidence at the scene that was neither collected nor examined. Although the defense argued that the absence of evidence corroborating the identification raised reasonable doubt, the defense never suggested that scientific evidence was required to convict Mr. Taylor. In short, this was not a case in which the defense "overreached" by putting "undue emphasis" on the lack of forensic evidence. *Stabb*, 423 Md. at 471, 473.

The State appropriately does not argue that the instruction given in this case passes muster under this Court's decisions in *Atkins, Stabb,* and later decisions. Rather, it argues that the *Atkins* and *Stabb* decisions "created an entirely new framework" for evaluating an anti-CSI effect instruction. Based on that premise, it asserts that those cases changed Maryland common law and should be applied only prospectively – *i.e.*, only to trials

26

occurring after those decisions were issued – and therefore not to Mr. Taylor's trial.[18]  As a fallback position, the State argues that "at best" the law created by those decisions should apply only to cases pending on direct appeal when those decisions were issued in 2011 and that this belated direct appeal does not fall into that category.  In the State's view, we should ignore the 2011 decisions and evaluate Mr. Taylor's argument with respect to the anti-CSI effect instruction given in his case "as if it were the Winter of 2008" when only *Evans* had been decided.[19]

This question only matters if we accept the State's premise that *Atkins* and *Stabb* so altered the standards for evaluating anti-CSI effect instructions that the instruction given here, though improper now, would have been permissible in 2008.  Otherwise, the State's question is hypothetical.

We do not accept the State's premise that an appellate court promptly reviewing the truncated anti-CSI effect instruction given in this case would have found it proper under

---

[18] We note, however, that in *Robinson* and *Hall* this Court has already applied the *Atkins* and *Stabb* decisions to instructions given at trials before the latter decisions were issued, as has the Court of Special Appeals.  *E.g.*, *Carrero-Vasquez v. State*, 210 Md. App. 504, 534-35 (2013) (anti-CSI effect instruction given in a 2011 trial that preceded *Atkins* and *Stabb* decisions); *Allen v. State*, 204 Md. App. 701 (2012) (same); *Samba v. State*, 206 Md. App. 508, 513, 531 (2012) (anti-CSI effect instruction given at 2010 trial).

[19] Postconviction cases often involve consideration of the state of the law at the time of a defendant's trial rather than at the time that the postconviction case is decided.  That is because postconviction cases frequently concern whether defense counsel rendered ineffective assistance at trial.  That standard can often only be fairly assessed in light of the law that existed at the time of trial.  *See, e.g.*, *Maryland v. Kulbicki*, 577 U.S. 1 (2015) (defense counsel's failure to attack at trial the use of a forensic technique that was discredited a decade later was not ineffective assistance of counsel as the particular forensic technique had enjoyed wide acceptance for many years prior to the trial).  This is not such a case.  Mr. Taylor has already litigated and obtained relief in his postconviction case.  The relief is this belated appeal which is, in fact, a very delayed direct appeal.

27

*Evans*. As discussed above, the *Evans* court did not endorse the use of an anti-CSI effect instruction in all cases. Instead, the court examined the circumstances of the trial of the case before it and described circumstances that might warrant an anti-CSI effect instruction, if properly phrased. In *Evans*, the court found the instruction was "warranted" in the circumstances of that case as a result of defense counsel's "robust and vehement closing arguments" concerning the investigators' "failure to employ audio or video surveillance equipment and the lack of any other investigative or scientific evidence." However, the court noted that, in advising that the prosecution need not employ specific investigative techniques, the instruction in that case had stressed that absence of forensic evidence did not matter "as long as the evidence adduced supports a finding of guilt beyond a reasonable doubt." 174 Md. App. at 570. And the *Evans* court cautioned that "such an instruction will run afoul of the prohibition against relieving the State of its burden [of proof beyond a reasonable doubt] where the instruction is predominant in the overall instructions and its relation to the reasonable doubt standard unclear." *Id.* at 570-71.

In contrast to the record before the court in *Evans*, the record in this case does not reflect "robust and vehement arguments" by the defense as to the lack of forensic evidence. Indeed, in closing argument, defense counsel himself told the jury that the State did not have to produce forensic evidence to establish proof beyond a reasonable doubt. Moreover, the anti-CSI effect instruction in this case was not accompanied by any explanation as to how the jury was to relate it to the State's burden of proving guilt beyond a reasonable doubt. The intermediate appellate court in *Evans* believed it was important that an anti-CSI effect instruction be given "in conjunction with the explication of the State's burden

28

to prove the defendant guilty beyond a reasonable doubt." 174 Md. App. at 571. That did not happen here.[20] Even an appellate court applying the *Evans* standard alone would likely find the instruction in this case wanting. *See Samba v. State*, 206 Md. App. 508, 533 (2012) (concluding that an anti-CSI effect instruction was defective in comparison to the instruction given in *Evans* because it failed to advise the jury to consider the "lack of evidence" in determining whether there was reasonable doubt). Thus, had Mr. Taylor's counsel pursued an appeal in 2008, and had the Court of Special Appeals decided it before 2011, that court's application of the standard it had adopted in *Evans* would very likely have resulted in a reversal of Mr. Taylor's conviction.

Finally, we note that Mr. Taylor's trial was nearly contemporaneous with those in *Atkins* and *Stabb*. (The trial in *Atkins* took place three months before Mr. Taylor's trial, and the trial in *Stabb* took place four months after Mr. Taylor's). Had a timely direct appeal been filed on Mr. Taylor's behalf, that appeal would have wended its way through the Court of Special Appeals to this Court on a similar timeline to the other two cases. The Court would likely have applied the analysis that it used in *Atkins* and *Stabb*. The only difference might have been that a decision called *Taylor* might have displaced *Atkins* or *Stabb* as the leading 2011 decision on anti-CSI effect instructions.

---

[20] The State points to other places in the trial court's instructions besides the anti-CSI effect instruction that refer to reasonable doubt, but the most proximate mention of reasonable doubt – the identification instruction – told the jury that the State could satisfy its burden through a single witness.

The instruction given at Mr. Taylor's trial was erroneous, whether assessed under *Atkins*, *Stabb*, and subsequent cases or under *Evans* alone. The retroactivity question that the State raises is thus hypothetical, and so we do not reach it.[21]

We agree with Court of Special Appeals that the trial judge abused his discretion by giving what amounted to a preemptive anti-CSI effect instruction that was not in conjunction with a reiteration of the reasonable doubt standard. The question then is whether the error was harmless or not.

## C.    *Harmless Error?*

The State argues that any error in the anti-CSI effect instruction was harmless. The Court of Special Appeals agreed with the State on that score. We do not.

An error by a trial court is harmless only if the reviewing court "is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey v. State*, 276 Md. 638, 659 (1976); *see also Hall*, 437 Md. at 540-41 (anti-CSI effect instruction was harmless error when it was "of no significance to the verdict"). The Court of Special Appeals noted that standard but, when applying it, focused on the fact that the identification of Mr. Taylor by the victim was "sufficient unto itself" to support a verdict of guilty and that forensic evidence was "not essential" to a conviction of Mr. Taylor. 236 Md. App. at 443-44.

---

[21] In its opinion in this case, the Court of Special Appeals engaged in a thorough analysis of the nature of a belated appeal and the case law concerning anti-CSI effect instructions and, consistent with one of its past anti-CSI effect decisions that had also analyzed the issue, rejected the State's argument that the 2011 cases would not apply to Mr. Taylor's appeal. 236 Md. App. at 422-28; *see also Allen v. State*, 204 Md. App. 701, 714-21 (2012).

The standard for harmless error sets a higher bar than whether there was sufficient evidence to support the conviction. *Dionas v. State*, 436 Md. 97, 116-17 (2013) (a test of whether there was evidence "otherwise sufficient" to support the verdict is a "misapplication of the harmless error test"); *Devincentz v. State*, 460 Md. 518, 561-62 (2018) (same). The question is whether the error could have influenced the verdict, not whether there is evidence to support the verdict. The fact that there was sufficient evidence for a jury to convict means only that the trial court properly denied the defense motion for a judgment of acquittal at the close of the evidence. It does not necessarily mean that the trial court's error "in no way influenced the verdict" – or that an appellate court can say, beyond a reasonable doubt, that it did not do so.

In arguing harmless error to us, the State does not rely on the sufficiency of the evidence to support Mr. Taylor's conviction.[22] Instead, the State asserts that the record demonstrates that any attempt to develop forensic evidence in this case would have been futile. For example, the State contends that a forensic examination of household surfaces or items possibly touched by the assailant would likely have yielded only the fingerprints or DNA of the victim, not the assailant. That supposition may well be correct and might appropriately have been elicited in testimony and argued to the jury. But it does not mean that we can say beyond a reasonable doubt that the erroneous anti-CSI effect instruction in no way influenced the verdict.

---

[22] In its brief, the State urges that, even if the intermediate appellate court misapplied the harmless error test in its analysis, we should nonetheless hold that any error was harmless based on the record of this case.

31

The State further suggests that the anti-CSI effect instruction in this case had minimal impact because it consisted of a single sentence amid many other jury instructions. As explained above, however, that single sentence lacked the critical cross-reference to the reasonable doubt standard that appears in past anti-CSI effect instructions reviewed by this Court. Moreover, the placement of the anti-CSI effect instruction may well have exacerbated the error. A jury instruction that informed the jury that it could convict solely on the basis of an identification by a single witness immediately preceded the anti-CSI effect instruction that told the jury the prosecution did not need to offer scientific evidence. The juxtaposition of the two instructions, especially without the ameliorative framing sentences that appear in the anti-CSI effect instruction given in other cases, could have further undermined the jury's perception of the State's burden of proof.

An instructive comparison can be made to the *Hall* decision, in which this Court held that an erroneous anti-CSI effect instruction was harmless. *Hall*, 437 Md. at 540. Defense counsel argued that the instruction was not harmless because the prosecution had not introduced any photos of the defendant driving the victim's car, any photos of the victim's injuries, or any recording of the victim identifying the defendant in a photo array. However, in that case, proof of the defendant's connection to the victim did not depend solely on an identification made by the victim. The defendant himself also testified about meeting the victim and driving the victim's car. In light of that testimony, the anti-CSI effect instruction could not have influenced the jury to minimize an absence of evidence linking the defendant to the victim and so the Court concluded, beyond a reasonable doubt, that it was "of no significance" to the verdict. *Id*. at 540-41.

In contrast to the defendant in *Hall*, Mr. Taylor never admitted to any involvement in the circumstances of the offense in this case. He was connected to the home invasion only by his identification by a single eyewitness, who likely had less than a minute to view her assailant's face, once uncovered, and who had never seen him before. The identification, in the case of the photo array, occurred a month after the incident; the in-court identification (during which the victim stated that Mr. Taylor looked "a little different") occurred six months afterwards. In similar circumstances, this Court has held that an erroneous preemptive anti-CSI effect instruction "was not harmless [because it] was compounded by the fact that the physical evidence to which it applied, the only evidence other than testimony, was so critical to the case." *Robinson*, 436 Md. at 563 n.4.

Finally, this Court has considered jury behavior during deliberations as a relevant (though not decisive) factor in harmless error analysis. *Dionas*, 436 Md. at 111. The jury at Mr. Taylor's trial was evidently troubled as to whether the prosecution had met its burden of proof in the case. The jury initially reported to the court that it was "evenly split" and it only returned a guilty verdict after receiving a modified Allen charge and then deliberating for an additional two hours.

In sum, this record does not establish beyond a reasonable doubt that the erroneous instruction had no influence on the verdict.

**IV**

**Conclusion**

For the reasons set forth above, we hold that the trial court abused its discretion in giving the anti-CSI effect instruction and that the error was not harmless.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR ENTRY OF AN ORDER VACATING PETITIONER'S CONVICTIONS AND REMANDING THE CASE TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR A NEW TRIAL. COSTS TO BE PAID BY WICOMICO COUNTY.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 2

September Term, 2020

───────────────────────────────

DEVON JORDAN TAYLOR

v.

STATE OF MARYLAND

───────────────────────────────

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

───────────────────────────────

Concurring Opinion by Biran, J.

───────────────────────────────

Filed: April 23, 2021

I am pleased to join Judge McDonald's well-written and persuasive Majority opinion. Because Mr. Taylor is entitled to a new trial whether we apply the law relating to anti-CSI jury instructions as it existed in 2008 or the law as it stands now, it undoubtedly is a sound approach not to decide which law applies. However, there is no jurisprudential bar to answering this important question, which the State presented in its conditional cross-petition. I write separately to explain that I would reach this question, and that I would adopt the Court of Special Appeals' cogent analysis on the point. *See Taylor v. State*, 236 Md. App. 397, 422-28 (2018).

As the Majority opinion recognizes, the Court of Special Appeals "engaged in a thorough analysis of the nature of a belated appeal and the case law concerning anti-CSI effect instructions and, consistent with one of its past anti-CSI effect decisions that had also analyzed the issue, rejected the State's argument that the 2011 cases would not apply to Mr. Taylor's appeal." Maj. Op. at 30 n.21.

I, too, would reject the State's argument. My reasoning boils down to the fact that, after Mr. Taylor was granted the right to file a belated appeal, his conviction was no longer final. Thus, Mr. Taylor's conviction is on direct review in this Court. As such, we should apply the law as it exists today to the question of whether the trial court erred in giving the anti-CSI jury instruction. *See Taylor*, 236 Md. App. at 427-28.

Circuit Court for Wicomico County
Case No. 22-K-08-000665
Argued: October 2, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 2

September Term, 2020
_____

DEVON JORDAN TAYLOR

v.

STATE OF MARYLAND
_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.
_____

Dissenting Opinion by Watts, J., which Booth, J., joins.
_____

Filed: April 23, 2021

Respectfully, I dissent. I would hold that Devon Jordan Taylor, Petitioner, failed to preserve a challenge to the "anti-CSI effect" jury instruction for appellate review. I would not reach the merits or address harmless error and would affirm the Court of Special Appeals's judgment.

In this case, in objecting to the "scientific evidence instruction," Taylor's counsel failed to comply either strictly or substantially with Maryland Rule 4-325(e).[1] At trial, when the circuit court, the prosecutor, and Taylor's counsel were discussing which jury instructions the circuit court would give, the circuit court stated: "I will probably give an instruction, which I have given in the past because I believe it has been generated by the evidence, and perhaps will be argued by [Taylor's counsel] concerning scientific evidence. Or lack thereof." At that point, Taylor's counsel said nothing about the circuit court's plan to give a jury instruction concerning scientific evidence. The circuit court gave the following jury instruction, commonly called an "anti-CSI effect instruction": "There is no legal requirement that the State offer scientific evidence as a part of its case, such as DNA, fingerprinting, blood typing, fiber analysis, hair follicle analysis, or anything of that nature." After the circuit court instructed the jury, the following exchange occurred:

THE COURT: Any additions or exceptions?

[TAYLOR'S COUNSEL]: We would except, Your Honor. May we approach?

THE COURT: Yes.

[1] Maryland Rule 4-325(e) provides in relevant part that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection."

(Counsel and Defendant approached the bench and the following occurred:)

[TAYLOR'S COUNSEL]: Your Honor, I would just except to the Court's scientific evidence instruction.

THE COURT: All right.

(Bolding omitted). That is the extent of Taylor's counsel's challenge or exception to the instruction. Taylor's counsel failed to identify any reason whatsoever for the exception—he merely stated that he excepted to the "scientific evidence instruction" and failed to identify any ground for the exception. It is clear that Taylor's counsel failed to strictly or substantially comply with Maryland Rule 4-325(e) because he failed to provide any reason at all for excepting to the circuit court giving a scientific evidence instruction and there is no indication whatsoever in the record that the trial court understood the basis for the objection.

Nothing in the record makes clear the ground for Taylor's counsel's exception to the instruction. In other words, this is not a scenario where "the ground for objection is apparent from the record[.]" Watts v. State, 457 Md. 419, 426, 179 A.3d 929, 933 (2018) (citation omitted). There is no hint in the record that Taylor's counsel was somehow implicitly relying on *dicta* from Evans v. State, 174 Md. App. 549, 571, 922 A.2d 620, 633, cert. denied, 400 Md. 648, 929 A.2d 890 (2007), as the ground for the exception. In Evans, the Court of Special Appeals concluded that the "anti-CSI effect" jury instruction was a correct statement of the law, that it was not fairly covered by the other jury instructions, and that it was applicable to the circumstances of the case because, during the defendant's closing argument, his counsel made "robust and vehement" assertions regarding the lack

- 2 -

of any scientific evidence produced by the State.  Id. at 570, 922 A.2d at 632.  In *dicta*, the Court of Special Appeals observed that "the preferable practice" would be for a trial court, immediately after giving an "anti-CSI effect" jury instruction, to reiterate "the State's burden to prove the defendant guilty beyond a reasonable doubt."  Id. at 571, 922 A.2d at 633.

In this case, Taylor's counsel never once referred to Evans—much less stated or implied that in excepting to the instruction he was relying on interpretation of *dicta* from the case as a basis for an objection.  The circumstance that there is *dicta* in a case that could support a defendant's objection to a jury instruction certainly does not mean that the basis for objection is apparent from the record, particularly where the defendant's counsel never even mentioned the existence of the case.  Certainly, where a defendant's counsel does nothing to call a trial court's attention to a particular appellate opinion, there is nothing in the record—apparent or otherwise—that indicates that the defendant's counsel wanted the trial court to consider the holding in the opinion as the basis for an objection and even more certainly, there is nothing in the record to indicate that the defendant's counsel's objection was based on *dicta* from the opinion.

The principle that a trial court is presumed to know the law is not applicable here.  See Harris v. State, 458 Md. 370, 412, 182 A.3d 821, 846 (2018).  The principle simply means that, absent evidence to the contrary, an appellate court will presume that a trial court knew and correctly applied the law.  This principle does not in any way stand for the proposition that, because a trial court is presumed to know the law, a trial court is also presumed to know the basis for an objection where a defendant's counsel does not give

one, *i.e.*, the principle does not stand for the proposition that a trial judge is clairvoyant. Equally important, for a defendant to preserve a challenge to a jury instruction by substantially complying with Maryland 4-325(e), it is the record that must make apparent the ground for the objection to the jury instruction—not the trial court's presumed knowledge of the law. If it were otherwise—*i.e.*, if the trial court's presumed knowledge of the law could substitute for a defendant providing a ground for an objection or exception to a jury instruction—a defendant would never need to provide such grounds, and the mere act of objecting or excepting would always be sufficient to substantially comply with Maryland Rule 4-325(e).

Moreover, at the time of the trial in this case, "anti-CSI effect" instructions were permitted and the circuit court could not have been presumed to know the basis for Taylor's counsel's objection. Although it is now clear that "anti-CSI effect" jury instructions are "disfavored[,]" Harris, 458 Md. at 390, 182 A.3d at 833, that was not the case before this Court first addressed "anti-CSI effect" jury instructions in 2011 in Atkins v. State, 421 Md. 434, 437-38, 26 A.3d 979, 980 (2011). Hindsight is 20/20, and what is known and obvious today about "anti-CSI effect" jury instructions was anything but obvious before this Court decided Atkins. Between 2007 and 2011, at the time when the trial in this case occurred, the Court of Special Appeals's holding in Evans, 174 Md. App. at 570-71, 922 A.2d at 632-33, indicated that "anti-CSI effect" jury instructions were generally proper. Without Taylor's counsel expressly setting forth a ground for an exception to the "anti-CSI effect" jury instruction, the basis for the exception could not have been apparent from the record. In short, nothing about the presumption that trial courts are presumed to know the law gives

- 4 -

rise to the inference that the circuit court must have understood the grounds for Taylor's counsel's exception to the "anti-CSI effect" jury instruction.  See Maj. Slip Op. at 23-24; Taylor v. State, 236 Md. App. 397, 414-15, 182 A.3d 201, 211 (2018).

I do not agree that the circuit court "would have understood that a defense objection to the anti-CSI effect instruction concerned whether it undermined the reasonable doubt standard."  Maj. Slip Op. at 24.  The circuit court's statement that it would give the "anti-CSI effect" jury instruction because Taylor's counsel may have been planning to make an argument regarding a lack of scientific evidence did not, in any way, indicate that the circuit court knew the basis for Taylor's counsel to object to the instruction.  If anything, the circumstance that the circuit court gave the jury instruction demonstrates that the circuit court believed that doing so was appropriate and that it did not understand the basis for the exception—*i.e.*, the circuit court was of the view that there was no valid reason under existing law (Evans) not to give the jury instruction.

Similarly, the circumstance that the circuit court gave the "anti-CSI effect" jury instruction immediately after a jury instruction regarding whether identification of Taylor by the victim was sufficient proof of guilt does not indicate that the circuit court had any notion that the "anti-CSI effect" jury instruction could be perceived to undermine the State's burden of proof.  Common sense would lead to the conclusion that the order in which the circuit court gave the jury instructions does not establish that the grounds for Taylor's counsel's exception to the "anti-CSI effect" jury instruction were apparent to the court.  In this case, the circuit court did not indicate in any way that it understood the

grounds for the exception and there is no basis in the record for inferring that the court understood as much.[2]

From my perspective, Taylor's challenge to the "anti-CSI effect" jury instruction is not preserved for appellate review. I agree with the Court of Special Appeals's judgment

---

[2]In my view, plain error review is not warranted in this case. Maryland Rule 4-325(e) provides that "[a]n appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object." In Newton v. State, 455 Md. 341, 364-65, 168 A.3d 1, 14 (2017), this Court addressed plain error as follows:

Plain error review is reserved for those errors that are compelling, extraordinary, exceptional[,] or fundamental to assure the defendant of a fair trial. Before we can exercise our discretion to find plain error, four conditions must be met: (1) there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the [defendant]; (2) the legal error must be clear or obvious, rather than subject to reasonable dispute; (3) the error must have affected the [defendant]'s substantial rights, which in the ordinary case means [that] he [or she] must demonstrate that it affected the outcome of the [trial] court proceedings; and (4) the error must seriously affect the fairness, integrity[,] or public reputation of judicial proceedings.

It is rare for the Court to find plain error. Indeed, we will do so only when the error was so material to the rights of the [defendant] as to amount to the kind of prejudice that precluded an impartial trial. We have found this to be true of serious errors in jury instructions that "undermined a core value of constitutional criminal jurisprudence." Savoy[ v. State], 420 Md. [232,] 255, 22 A.3d 845[, 859] (error in reasonable doubt jury instruction); see State v. Hutchinson, 287 Md. 198, 208, 411 A.2d 1035[, 1041] (1980) (failure to instruct the jury that they could find the defendant not guilty); Squire v. State, 280 Md. 132, 133, 135, 368 A.2d 1019[, 1020] (1977) (jury instruction placing the burden of proving self-defense on the defendant).

(Cleaned up). The alleged error in this case clearly does not rise to the level of qualifying for plain error, i.e., it does not rise to the "compelling, extraordinary, exceptional[,] or fundamental" level of plain error. Id. at 364, 168 A.3d at 14 (citation omitted). Simply put, this is not one of the "rare" cases in which this Court should exercise plain error review. Id. at 364, 168 A.3d at 14.

affirming Taylor's convictions, and would also affirm but for the reasons stated herein.

For the above reasons, respectfully, I dissent.

Judge Booth has authorized me to state that she joins in this opinion.