**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WALTER PALMON EDDINGS,

    Defendant - Appellant.

No. 24-2118

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:22-CR-00300-KWR-1)**

_____

Alan S. Mouritsen, Parsons Behle & Latimer, Salt Lake City, Utah, for Defendant – Appellant.

Tiffany L. Walters, Assistant United States Attorney (Holland S. Kastrin, Acting United States Attorney, with her on the brief), District of New Mexico, Albuquerque, New Mexico, for Plaintiff – Appellee.

_____

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

This is a direct appeal from Defendant-Appellant Walter Eddings's conviction for two counts of being a felon in possession of a firearm or ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. Count One of the indictment was based on

Sergeant Peter Andazola's testimony that he observed Mr. Eddings reposition a rifle while cleaning the back seat of an SUV. Count Two concerns additional firearms and ammunition that officers found in a backpack Mr. Eddings was carrying at the time of his arrest.

Before trial, Mr. Eddings moved to suppress evidence seized as a result of his warrantless arrest, contending that the officers lacked probable cause. The district court found that the officers had probable cause to make the warrantless arrest and denied the motion. At trial, the Government requested an investigative-techniques jury instruction, which informs the jury that the government is not obligated to use all, or any particular, investigative methods available to prove its case. The district court gave the instruction over Mr. Eddings's objection. After deliberations, the jury returned a verdict of guilty on both counts.

On appeal, Mr. Eddings raises four challenges. First, Mr. Eddings challenges the district court's denial of his motion to suppress, arguing that Sgt. Andazola's testimony was not credible and was insufficient to support a finding of probable cause. Second, Mr. Eddings challenges the sufficiency of the evidence to support a conviction as to Count One, arguing the evidence establishes only that Mr. Eddings moved a bag containing a rifle but that no evidence supported a finding that he physically handled the rifle or knew the bag contained a rifle. Third, Mr. Eddings contends the district court abused its discretion in giving the investigative-techniques instruction because the instruction was inappropriate considering the arguments presented at trial and because the instruction was misleading when used in

combination with the instruction on reasonable doubt. Lastly, Mr. Eddings argues for the first time in his reply brief that evidence found in the backpack should have been suppressed because the warrantless search of the backpack was not a valid search incident to arrest.

For the reasons explained below, we reject Mr. Eddings's arguments and, exercising jurisdiction under 28 U.S.C. §1291, we affirm his conviction.

## I.    BACKGROUND

### A.  Factual Background

On January 31, 2022, Sgt. Andazola of the New Mexico State Police was conducting surveillance at the Ambassador Inn (the "Inn") in Albuquerque as part of an investigation to apprehend a fugitive who had been seen at the Inn. Mr. Eddings was not initially the subject of this investigation. In preparation for this surveillance, however, Sgt. Andazola received briefing informing him that Mr. Eddings had also been seen at the Inn. Sgt. Andazola conducted a record search on Mr. Eddings as a safety precaution where he saw a photograph of Mr. Eddings and learned that Mr. Eddings had a prior felony conviction.

During the surveillance operation, Sgt. Andazola and his partner, Agent Charles Volk, were in a truck in the parking lot of the Inn. Agent Volk was positioned in the driver's seat and facing away from the Inn. Sgt. Andazola was positioned in the truck's back seat, looking through the back window with binoculars and a still camera, to surveil the Inn. Distant surveillance video of the operation

3

shows that conditions were sunny and that Sgt. Andazola had unobstructed views of the Inn as well as several vehicles in the parking lot.

While conducting surveillance, Sgt. Andazola observed Mr. Eddings and a bald man exit the Inn together down a small stairwell. The bald man carried a bag with the barrel of a firearm sticking out of it and held the gun by the exposed barrel. Sgt. Andazola was able to identify the firearm as an AK-47-style rifle. He then watched the bald man place the bag with the rifle in the back seat of a black Toyota SUV.

Shortly thereafter, Mr. Eddings approached the SUV and began cleaning the vehicle—removing trash and using wet wipes to clean the seats. While Mr. Eddings cleaned the back seat of the SUV, Sgt. Andazola saw Mr. Eddings pick up the rifle for a few seconds and reposition it in the back seat. Eventually, Mr. Eddings got into the front passenger's seat, the bald man took the driver's seat, and an unidentified woman got into the back seat before the car drove away.

Law enforcement followed the SUV to a 7-Eleven where they apprehended Mr. Eddings. At the time of arrest, Mr. Eddings had a black backpack slung around his shoulder. After arriving at the scene—at which point Mr. Eddings was in custody—Sgt. Andazola searched the backpack and discovered two loaded handguns inside. The next day, officers obtained a warrant to search the SUV, where they found the rifle and a loaded magazine in a bag in the backseat.

4

### B. Procedural Background

Mr. Eddings was indicted and charged with two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. Count One related to Mr. Eddings's possession of the rifle found in the SUV; Count Two was based on his possession of the two pistols found in the backpack he was holding at the time of arrest.

Mr. Eddings moved to suppress all evidence recovered because of Mr. Eddings's arrest, arguing that his warrantless arrest was not supported by probable cause. Mr. Eddings argued that Sgt. Andazola's testimony was unsupported by corroborating evidence, and that his position facing Mr. Eddings's back would have made it unlikely he could see what Mr. Eddings was doing inside the vehicle. On this basis, Mr. Eddings argued that Sgt. Andazola's testimony was not credible and that there was no alternative basis to support a finding of probable cause.

The district court denied the motion, concluding the officers had probable cause to arrest Mr. Eddings based on Sgt. Andazola's identification of Mr. Eddings as a felon and his observation that Mr. Eddings physically moved a firearm in the back of a vehicle. The court noted that Sgt. Andazola saw the offense in broad daylight with unobstructed views across the parking lot during clear weather. It further observed that the Government had presented photos of Mr. Eddings cleaning the vehicle and that Sgt. Andazola gave an extensive explanation of what he was and was not able to see. Finally, the court pointed to Sgt. Andazola's extensive training and experience dealing with firearms through his time in the military and as a New

5

Mexico State Police officer. Based on his experience, the exposed barrel protruding from the bag, and the way the bag was being held, the court noted that Sgt. Andazola identified the item in the bag as a rifle with 100% certainty. The district court therefore determined that Sgt. Andazola's testimony was credible and supported a finding of probable cause.

At trial, Sgt. Andazola recounted the narrative of what he observed during his surveillance of the Inn. The Government also presented nontestimonial evidence, including distant surveillance footage showing activity in the parking lot, photographs of Mr. Eddings cleaning and sitting in the SUV, photographs of the firearms and ammunition that were found, and the firearms and ammunition themselves.

While cross-examining Sgt. Andazola, defense counsel drew attention to the lack of evidence directly corroborating Sgt. Andazola's testimony that Mr. Eddings repositioned the rifle. Defense counsel focused on the lack of photographic and video evidence of that moment and also drew attention to the lack of evidence presented from radio transmissions, DNA, and fingerprint analysis.

After the first day of the two-day trial, the Government asked the district court to provide an investigative-techniques instruction,[1] which would inform the jury that

---

[1] We use the term "investigative-techniques instruction" as the term used by the parties and the term used in our prior decision in *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014). Other courts have referred to these jury instructions as "anti-CSI" instructions based on their origin in attempting to taper unrealistic juror evidentiary expectations from investigative dramas such as CSI. *See, e.g.*, *Fahie v. Virgin Islands*, 858 F.3d 162, 166 (3d Cir. 2017). Still, other courts refer to these

the government was not required to use any particular investigative technique to prove its case. The district court had initially denied the request for such an instruction prior to trial, concluding it was "duplicative to existing pattern instruction § 1.08, which provides instruction on how the jury must weigh the testimony provided." ROA Vol. I at 250. However, shortly before the close of evidence, the court reconsidered, concluding that the evidence presented at trial warranted such an instruction.

Mr. Eddings's counsel objected that the instruction was unnecessary because it was duplicative and because he had not presented a wrong person defense. He also argued generally that the instruction undermined his client's ability to present a defense based on an inadequate investigation. The Government countered that the instruction was warranted by defense counsel's insinuation that testimonial evidence was insufficient to meet the Government's burden of proof. The court agreed with the Government and gave the investigative-techniques instruction over Mr. Eddings's objection.

After deliberations, the jury returned its verdict, finding Mr. Eddings guilty as to both Counts One and Two.

---

instructions as "no duty" instructions. *See, e.g.*, *Wheeler v. United States*, 930 A.2d 232, 238 (D.C. 2007).

## II.   ANALYSIS

Mr. Eddings raises four arguments on appeal. First, Mr. Eddings argues that the district court abused its discretion in denying his motion to suppress because his warrantless arrest was not supported by probable cause. Second, Mr. Eddings asserts that there was insufficient evidence to convict him as to Count One of the indictment because no evidence supported a finding that he actually or constructively possessed the rifle or that he had knowledge of the rifle. Third, Mr. Eddings contends the district court abused its discretion in giving the investigative-techniques instruction to the jury because the instruction was not warranted by the arguments made at trial and was misleading when combined with the district court's instruction regarding reasonable doubt. Fourth, Mr. Eddings argues that the district court plainly erred in failing to suppress evidence from the search of the backpack Mr. Eddings was carrying at the time of his arrest.

We address each argument in turn.

### A.   *Motion To Suppress*

Mr. Eddings contends the district court abused its discretion in denying his motion to suppress because it erred in concluding that Mr. Eddings's warrantless arrest was supported by probable cause. Mr. Eddings argues that Sgt. Andazola's testimony detailing how he observed Mr. Eddings handle a firearm while cleaning the back seat of the SUV was not credible based on Sgt. Andazola's position during surveillance and because it was unsupported by additional evidence. Mr. Eddings

8

also contends there was no evidence from which the district court could conclude that he knew the bag contained a firearm.

In response, the Government argues that the district court did not clearly err in its decision to credit Sgt. Andazola's testimony and that there was sufficient evidence from which Mr. Eddings's knowledge that the bag contained a rifle could be inferred. Furthermore, the Government urges that Mr. Eddings's argument regarding knowledge is waived because he failed to raise the argument in the district court and, on appeal, failed to provide good cause for his failure to raise the argument earlier.

## 1.    Standard of Review

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). Probable cause to arrest exists if, under the totality of the facts and circumstances within an officer's knowledge, "a reasonable person would believe that an offense has been committed by the person arrested." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (quotation marks omitted); *see also Mink v. Knox*, 613 F.3d 995, 1003 (10th Cir. 2010).

"When reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous." *United States v. Palms*, 21 F.4th 689, 697 (10th Cir. 2021) (internal quotation marks omitted). Determinations of

9

witness credibility are likewise reviewed for clear error. *United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003). However, we review the ultimate question of whether probable cause supported the search or seizure *de novo*. *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004).

**2.    Discussion**

Here, whether officers had probable cause to make a warrantless arrest turns on the credibility of Sgt. Andazola's testimony that he observed Mr. Eddings—an individual with a prior felony conviction—possess a firearm while cleaning the SUV. Mr. Eddings's primary contention is that the district court should not have credited Sgt. Andazola's testimony. In particular, Mr. Eddings notes that while Sgt. Andazola captured several photos of Mr. Eddings during his surveillance, he failed to capture any photographs of the moment when Mr. Eddings handled the firearm. Nor did the Government present any other corroborating evidence of possession. Furthermore, Mr. Eddings argues that Sgt. Andazola's position, facing Mr. Eddings's back while he cleaned the SUV, made it unlikely that Sgt. Andazola could observe what Mr. Eddings was doing inside the back seat of the vehicle.

Despite Mr. Eddings's skepticism as to what Sgt. Andazola could have observed, Sgt. Andazola testified that, using his binoculars and due to the position of Mr. Eddings's body, Sgt. Andazola was able to observe Mr. Eddings moving the bag. And video surveillance demonstrates that Sgt. Andazola's view was otherwise unobstructed and conducted in daylight with clear weather.

Furthermore, the lack of photographic and video evidence showing Mr. Eddings moving the firearm does not directly contradict that testimony. The video surveillance is from too far of a distance to observe what Mr. Eddings was doing in the back of the SUV. And Sgt. Andazola explained the absence of photographic evidence, stating that he was unable to appreciate the significance of what he observed until the opportunity to photograph the incident had passed.

Under these facts, the district court did not clearly err in crediting Sgt. Andazola's testimony that he observed Mr. Eddings reposition the firearm. As a result, there was probable cause to arrest Mr. Eddings as a felon in possession of a firearm.

For the first time on appeal, Mr. Eddings argues that probable cause was lacking because no evidence supported a reasonable basis to believe that Mr. Eddings knew that the bag in the SUV contained a firearm. Knowledge that the item possessed is a firearm or ammunition is a necessary element of a felon in possession charge under 18 U.S.C. § 922(g)(1). *Rehaif v. United States*, 588 U.S. 225, 227 (2019). Mr. Eddings, however, provides us with no reason why he did not raise this argument in the district court.

To preserve an issue for appeal, a party must "alert the district court to the issue and seek a ruling." *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1206 (10th Cir. 2022) (quotation marks and brackets omitted). "Changing to a new theory on appeal that falls under the same general category as an argument presented at trial or discussing a theory only in a vague and ambiguous way below is not adequate to

11

preserve issues for appeal." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 n.4 (10th Cir. 1998) (internal quotation marks omitted). Motions to suppress evidence and specific arguments to suppress evidence raised for the first time on appeal "are waived absent a showing of good cause for why they were not raised below." *United States v. Burke*, 633 F.3d 984, 991 (10th Cir. 2011).

Because Mr. Eddings failed to argue before the district court that a lack of evidence that he knew the bag contained a firearm precluded a finding of probable cause, and because he declined to show good cause for his failure to do so, this argument is waived. Nevertheless, there was sufficient evidence from which Mr. Eddings's knowledge of the firearm could have been inferred. Sgt. Andazola testified that the barrel of the rifle was left exposed and that the bald man, with whom Mr. Eddings was walking, held the gun by the barrel. From this exposed barrel, Sgt. Andazola testified that he was 100% certain that the bag contained a firearm. He also testified that Mr. Eddings exited the Inn with the bald man and eventually repositioned the rifle in the back seat of the SUV where the bald man had placed it. Based on the exposed barrel, Mr. Eddings's proximity to the bag while the barrel was exposed, and Mr. Eddings's repositioning the bag, the district court could have easily concluded that Sgt. Andazola had a reasonable basis to infer that Mr. Eddings knew the bag contained a firearm.

Accordingly, the district court did not abuse its discretion in denying Mr. Eddings's motion to suppress based on a finding of probable cause.

### B. Sufficiency of the Evidence

Mr. Eddings next contends the evidence was insufficient to convict him as to Count One of the indictment. First, he again argues there is insufficient evidence from which a reasonable jury could find that he knew the bag in the SUV contained a firearm. Additionally, Mr. Eddings argues that Sgt. Andazola's testimony is legally insufficient to support either actual or constructive possession of the rifle. Evidence that he possessed a bag containing a firearm, Mr. Eddings argues, is insufficient to support actual possession because he lacked physical contact with the firearm. And Mr. Eddings argues that the Government failed to present evidence of a nexus between himself and the rifle sufficient to support a finding of constructive possession.

### 1.     Standard of Review

"Under the sufficiency-of-the-evidence test, we view the evidence in the light most favorable to the government and ask whether the evidence—and any reasonable inferences to be drawn from it—would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gallegos*, 784 F.3d 1356, 1359 (10th Cir. 2015). In reviewing the sufficiency of the evidence, we do not "weigh conflicting evidence or consider witness credibility." *United States v. Freeman*, 70 F.4th 1265, 1273 (10th Cir. 2023) (quotation marks omitted).

This court reviews an unpreserved challenge to the sufficiency of the evidence for plain error. *United States v. Wyatt*, 964 F.3d 947, 952 (10th Cir. 2020). "To establish plain error, the appellant must demonstrate the district court (1) committed

error, (2) the error was plain, and (3) the plain error affected her substantial rights." *Id.* (quotation marks omitted). If the first three factors are met, the court "may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

Mr. Eddings acknowledges that the issue of whether there was sufficient evidence to convict him of Count One was not preserved. However, "a conviction in the absence of sufficient evidence will almost always satisfy all four plain-error requirements." *Gallegos*, 784 F.3d at 1359. Thus, the plain error analysis differs little from a *de novo* analysis in this context. *Id.*

**2.    Discussion**

*a.    Knowledge*

In his challenge to the sufficiency of the evidence as to Count One, Mr. Eddings reiterates his argument that there was insufficient evidence presented to establish that he knew a firearm was inside the bag in the SUV. As with his argument regarding knowledge and probable cause, however, we are unpersuaded.

At trial, Sgt. Andazola reiterated his suppression hearing testimony as to what he had seen during his surveillance of the Ambassador Inn. He testified that he saw Mr. Eddings and the bald man exit the Inn together and that the bald man was carrying a bag containing a rifle and holding the rifle by its exposed barrel. Sgt. Andazola again recounted how the bald man had placed the bag containing the rifle in the SUV and how he had later seen Mr. Eddings pick up and reposition the bag. The jury observed the rifle in court as well as an image of the bag in which it

was stored. Based on Sgt. Andazola's testimony that the barrel of the rifle was exposed and visible, Mr. Eddings's proximity to the bald man while he carried the rifle by the barrel, Mr. Eddings's repositioning of the rifle, and the jury's ability to see the bag in which it was contained, it was not unreasonable for the jury to conclude beyond a reasonable doubt that Mr. Eddings knew the bag contained a firearm.

### b. *Actual possession*

Next, Mr. Eddings argues that actual possession requires evidence of direct physical contact and that the evidence was therefore insufficient to sustain a conviction as to Count One under a theory of actual possession. Mr. Eddings argues that the evidence at trial at most supported a finding that he handled the bag in which the rifle was contained. Thus, he contends there was no evidence presented to support a finding that Mr. Eddings handled the rifle directly. According to Mr. Eddings, this forecloses the possibility of actual possession. We disagree.

This court has never held that this kind of direct physical contact is required to support a finding of actual possession. Instead, we have identified direct physical *control* as the defining feature of actual possession. *United States v. Thompson*, 133 F.4th 1094, 1098 (10th Cir. 2025).

In *United States v. Johnson*, 46 F.4th 1183, 1187–88 (10th Cir. 2022), we considered and rejected the defendant's argument that actual possession required physical handling of a firearm. We concluded that evidence the defendant had placed his leg over the firearm was sufficient to support a finding of actual possession

because knowingly sitting on an item indicates physical control over it. *Id.* at 1187–89. Pointing to a prior decision noting that a firearm's presence in the defendant's front pocket amounted to actual possession, *see United States v. Spence*, 721 F.3d 1224, 1229–31 (10th Cir. 2013), we suggested in *Johnson* that the result would be the same if a defendant asked a coconspirator to place a firearm into the defendant's pocket or holster such that the defendant would have direct physical control over the firearm despite never touching it. *Johnson*, 46 F.4th at 1188.

Similarly, here we have no difficulty concluding that evidence presented at trial was sufficient to support a finding that Mr. Eddings actually possessed the rifle in the SUV. In taking direct physical control over the bag, the evidence necessarily supports a finding that Mr. Eddings likewise exercised direct physical control over what the jury could reasonably conclude were the known contents of that bag.

  *c.*  *Constructive possession*

Lastly, Mr. Eddings argues that the evidence was insufficient for a jury to find beyond a reasonable doubt that he constructively possessed the rifle based on his presence in the SUV where the rifle was found. "[C]onstructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) (internal quotation marks omitted). "When a defendant has exclusive possession of the premises on which a firearm is found, knowledge,

16

dominion, and control can be properly inferred because of the exclusive possession alone." *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007).

Yet, to support a finding of constructive possession when two or more people occupy a given space, the government must show a nexus between the defendant and the firearm. *United States v. Samora*, 954 F.3d 1286, 1290 (10th Cir. 2020). This nexus requires a showing that the defendant knew of, had access to, and intended to exercise power and control over the firearm. *United States v. Stepp*, 89 F.4th 826, 832 (10th Cir. 2023). Such a nexus may be proven by direct or circumstantial evidence so long as it is not proven by joint occupancy alone. *Id.* at 832–33.

Mr. Eddings argues that the evidence here, rather than demonstrating access to the firearm and an intent to exercise power and control over it, instead merely shows his presence in a vehicle with the rifle and two other persons. Again, we are not persuaded.

As discussed above, the evidence presented at trial allowed the jury to conclude beyond a reasonable doubt that Mr. Eddings had knowledge that there was a rifle in the bag. Sgt. Andazola's testimony that he witnessed Mr. Eddings readjust the firearm in the back seat of the SUV and that Mr. Eddings eventually occupied the front passenger seat of the vehicle is sufficient for a reasonable jury to conclude that Mr. Eddings had both access to the rifle and the intent to exercise power and control over it. Accordingly, the evidence presented at trial was sufficient to support a conviction as to Count One based on a finding of either actual or constructive possession over the rifle.

### C. Jury Instructions

Mr. Eddings next argues that the district court abused its discretion in offering the jury an investigative-techniques instruction, which told the jury the Government was not required to use all investigative techniques available or to use any particular investigative technique to prove its case. The instruction read to the jury was as follows:

> You have heard testimony as to the manner in which the Government conducted its investigation in this case, including certain investigative methods or techniques that were used, and certain investigative methods or techniques that were not used. In attempting to prove its case, the Government is under no obligation to use all of the investigative methods that are available to it or use any particular method. The question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of the defendant's guilt.

ROA Vol. IV at 351. While Mr. Eddings concedes we have approved these instructions in other cases, he makes two arguments for why the instruction was impermissible in this case.

First, Mr. Eddings argues that the circumstances of the trial did not warrant an investigative-techniques instruction because the arguments presented in the case did not repeatedly draw attention to additional techniques that the Government should have used. Instead, Mr. Eddings states that he merely drew attention to the lack of evidence produced by the Government's chosen investigative methods. Second, he argues that the combination of the investigative-techniques instruction and the district court's use of the Tenth Circuit pattern instruction defining reasonable doubt, which fails to list a lack of evidence as a basis for reasonable doubt, misled the jury

into believing that it could not consider investigative inadequacies. The Government argues that Mr. Eddings failed to preserve these specific objections and that he waived plain error review by failing to argue for it in his opening brief.

1.      **Standard of Review**

When preserved, we review a district court's decision to give a particular jury instruction for abuse of discretion and review legal objections to the instructions *de novo*. *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012). We review jury instructions by examining the instructions in their entirety. *United States v. Heckard*, 238 F.3d 1222, 1231 (10th Cir. 2001).

A district court judge has "substantial discretion in formulating the instructions, so long as they are correct statements of the law and adequately cover the issues presented." *United States v. Vasquez*, 985 F.2d 491, 496 (10th Cir. 1993). The question is not whether the instructions are flawless but instead "whether the jury was misled in any way and whether it had a[n] understanding of the issues and its duty to decide those issues." *Brodie v. Gen. Chem. Corp.*, 112 F.3d 440, 442 (10th Cir. 1997) (quotation marks omitted). We will reverse only where there is "substantial doubt that the jury was fairly guided." *United States v. Hicks*, 116 F.4th 1109, 1118 (10th Cir. 2024) (quotation marks omitted).

However, Rule 30(d) of the Federal Rules of Criminal Procedure requires that "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Failure to object in accordance

19

with Rule 30 precludes appellate review except for plain error.[2] *United States v. Zapata*, 546 F.3d 1179, 1190 (10th Cir. 2008). "If a party presents a new argument on appeal in support of its objection to a jury instruction, that new argument is unpreserved." *United States v. Walker*, 130 F.4th 802, 806 (10th Cir. 2025). A generalized objection to an instruction is likewise insufficient to preserve a specific objection on appeal. *Zapata*, 546 F.3d at 1190.

"When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). We have, however, allowed a criminal defendant to argue error in an opening brief and then argue plain error in a reply brief after the government asserts waiver. *United States v. McBride*, 94 F.4th 1036, 1044 (10th Cir. 2024). This exception will apply only if the defendant "attempts to run the gauntlet created by our rigorous plain-error standard of review." *United States v. Isabella*, 918 F.3d 816, 845 (10th Cir. 2019) (internal quotation marks omitted).

---

[2] Again, plain error review requires the appellant to demonstrate that (1) the district court erred, (2) the error was plain, and (3) the error affected the appellant's substantial rights. *United States v. Wyatt*, 964 F.3d 947, 952 (10th Cir. 2020). If the first three factors are met, the court "may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

Before the district court, Mr. Eddings objected to the use of an investigative-techniques instruction, articulating three bases for the objection. First, he argued that the instruction was inapplicable to the circumstances of this case because the case from which the language was taken, *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014), approved use of the instruction when the defense argues that a proper investigation would have revealed the true culprit of the crime. But here, rather than pointing fingers at another culprit, Mr. Eddings argued that no crime ever occurred. Second, Mr. Eddings asserted that the instruction was duplicative of Pattern Criminal Jury Instruction 1.08, which already addressed the jury's role to judge the credibility of evidence. Third, Mr. Eddings claimed generally that the instruction impeded his right to present a thoughtful and well-reasoned defense by undermining his ability to attack law enforcement's investigation and credibility.

On appeal, Mr. Eddings argues that an investigative-techniques instruction is misleading in cases where defense counsel merely criticizes the government's chosen investigative methods rather than pointing to additional methods that should have been used. Mr. Eddings also argues that while such an instruction may be permissible alone, it is misleading when combined with instructions that fail to explicitly instruct the jury that a lack of evidence provides a basis for reasonable doubt. Neither of Mr. Eddings's arguments were raised before the district court. Furthermore, Mr. Eddings's general objection that the instruction undermined his ability to attack the credibility of the Government's investigation was insufficient to preserve the specific objections now raised.

21

Mr. Eddings likewise failed to argue that the jury instructions should be reviewed for plain error in his opening brief. In his reply brief, Mr. Eddings does raise plain error with respect to his second argument that the combination of the investigative-techniques instruction and the instruction on reasonable doubt misled the jury. Yet, he did not do so for his argument that the instruction is impermissible when the defense merely criticizes the lack of evidence produced by the investigative methods that the government used.

While we would ordinarily deem Mr. Eddings's first argument to be waived, waiver "binds only the party, not the court." *See Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 837 (10th Cir. 2014). Because Mr. Eddings's arguments regarding the investigative-techniques instruction are related, we exercise our discretion to overlook the failure to argue plain error with respect to Mr. Eddings's first argument. Nonetheless, because Mr. Eddings failed to raise his specific objections before the district court, we consider Mr. Eddings's challenges to the jury instructions under plain error review.

**2.    Discussion**

This court first addressed the propriety of an investigative-techniques instruction in *United States v. Cota-Meza*, 367 F.3d 1218 (10th Cir. 2004). The specific instruction in that case was as follows:

> Evidence has been received regarding law enforcement methods and equipment used in the investigation of this case. Likewise, evidence has been received concerning enforcement methods and equipment which were not used in relation to the investigation.

22

> You may consider this evidence for the purpose of evaluating the weight of the evidence produced by the government and the credibility of law enforcement personnel involved in the investigation. However, there is no legal requirement that the government, through its enforcement agents, must use all known or available crime detection methods or any particular type of equipment in its investigations.

*Id.* at 1223.

On appeal, the defendant in *Cota-Meza* argued that the instruction improperly suggested to the jury that "it was okay that the government didn't fingerprint, that it didn't get video-recorders fixed or that [the] lost audio-tapes of Mr. Cota-Meza['s] interview were irrelevant." *Id.* (alterations in original). Notwithstanding these concerns, we concluded that it was not an abuse of discretion to give the instruction because it was a correct statement of the law, and the instruction did not "prevent the jury from concluding that a failure to employ certain investigative methods nevertheless detracts from the credibility of the government's evidence." *Id.* We noted that the district court had specifically instructed the jury that it could consider the manner in which the investigation was conducted in evaluating the weight of the evidence and credibility of testimony. *Id.* We likewise observed that the jury had been instructed they were the sole judges of the credibility of witnesses and weight of the evidence. *Id.* We thus concluded that there was no substantial doubt that the jury was fairly guided. *Id.*

This court again approved an investigative-techniques instruction in *Trent*, 767 F.3d at 1051. The *Trent* instruction was identical to the instruction used in this case, omitting the precatory language used in *Cota-Meza* to instruct the jury that it could

23

consider the failure to use certain investigative techniques "for the purpose of evaluating the weight of the evidence produced by the government and the credibility of law enforcement personnel involved in the investigation." *Compare* Court's Instructions to the Jury at 15 (ROA Vol. I at 51), *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014) (No. 12-6283), *with Cota-Meza*, 367 F.3d at 1223. The defendant in *Trent* argued that the investigative-techniques instruction undercut his theory that the government's investigation was faulty and that a proper investigation would have uncovered the real possessor of the gun. *Trent*, 767 F.3d at 1051. We rejected this argument, concluding that the instruction did not prevent the defendant from arguing that a better investigation would have exonerated him.[3] *Id.*

a.      *Whether the instruction was improper based on the arguments made at trial*

Mr. Eddings's first argument is that the use of an investigative-techniques instruction is improper in cases where the defendant merely criticizes the evidence available from the government's chosen investigative methods rather than repeatedly suggesting that other specific investigative techniques should have been used. In

---

[3] Other unpublished decisions in this circuit have approved the use of investigative-techniques instructions in cases where the instruction (1) accurately states the law, (2) does not prevent the jury from concluding that failure to use certain investigative techniques detracts from the credibility of the government's evidence, and (3) includes other instructions informing the jury that it is the sole judge of the credibility of witnesses and weight of the evidence. *See United States v. Lemon*, 714 F. App'x 851, 861 (10th Cir. 2017) (unpublished); *see also United States v. Johnson*, 479 F. App'x 811, 817–18 (10th Cir. 2012) (unpublished); *United States v. Arthurs*, 647 F. App'x 846, 847–48 (10th Cir. 2016) (unpublished); *United States v. Jenks*, 714 F. App'x 894, 897–98 (10th Cir. 2017) (unpublished).

cases where defense counsel suggests that specific techniques should have been used, Mr. Eddings argues that the jury is able to understand the instruction in relation to the defendant's argument. However, when the defendant merely criticizes inadequacies in the evidence produced by the government's chosen method, Mr. Eddings argues that an investigative-techniques instruction improperly suggests to the jury that it should ignore the deficiencies in the government's evidence because the government was never obligated to use that investigative technique to prove its case.

In support of this argument, Mr. Eddings relies on cases from the District of Columbia and Maryland state courts, which limit the use of investigative-techniques instructions to cases where defense counsel makes particular kinds of arguments at trial.[4] Mr. Eddings also points to cases in other federal circuit courts, which have

---

[4] Maryland courts have held that investigative-techniques instructions have the unconstitutional effect of undermining the prosecution's burden of proof except when the instruction is used to cure an improper defense argument, such as a suggestion by the defense counsel that forensic evidence is required. *See Taylor v. State*, 473 Md. 205, 210–18 (2021) (presenting an overview of Maryland cases addressing the issue and holding that these instructions are improper in the absence of defense overreaching). Even when used as a curative instruction, Maryland courts require that the instruction refer to the prosecution's continuing burden to prove its case beyond a reasonable doubt. *Id.* at 218–19.

Courts in the District of Columbia take a more moderate approach and allow the instruction if (1) there is evidence that the police failed to gather available evidence or a defense argument to that effect and (2) the instruction is needed to counter an inference that the police were negligent in conducting their investigation. *See Wheeler*, 930 A.2d at 238–39; *Blocker v. United States*, 239 A.3d 578, 589 (D.C. 2020). The D.C. courts have stated that, without such an anchor in the evidence or arguments, the instruction risks confusing the jury and undermining the reasonable doubt standard. *Wheeler*, 930 A.2d at 239.

approved the use of investigative-techniques instructions where defense counsel emphasized that the government failed to use specific techniques, like DNA, to support its case. *See United States v. Saldarriaga*, 204 F.3d 50, 52–53 (2d Cir. 2000) (per curiam); *United States v. Gorny*, 655 F. App'x 920, 922–24 (3d Cir. 2016) (unpublished). Yet nothing in these decisions suggests that a district court abuses its discretion by giving an investigative-techniques instruction when defense arguments regarding an inadequate investigation are not sufficiently repetitive or where counsel merely criticizes the investigative techniques used.

Mr. Eddings identifies no federal case law suggesting that a district court abuses its discretion when it gives an investigative-techniques instruction in the absence of a defense argument that the government should have used specific, unutilized investigative techniques. Nor does he identify any federal case law suggesting that such arguments must be sufficiently repetitive to justify an instruction. Indeed, circuit courts addressing investigative-techniques instructions have generally approved of their use where the instruction accurately states the law and the jury is properly instructed as to the government's burden of proof.[5]

---

[5] *See, e.g.*, *United States v. Carter*, No. 21-1005, 2022 WL 16909404, at *4 (2d Cir. Nov. 14, 2022) (concluding that the district court did not plainly err in giving an investigative-techniques instruction because it was a correct statement of law and noting that the court properly instructed the jury on the government's burden of proof and the jury's duty to consider all the evidence or lack thereof); *United States v. Brown*, 658 F. App'x 100, 104 (3d Cir. 2016) (approving the use of an investigative-techniques instruction and rejecting the argument that it impermissibly shifted the burden of proof because the jury was accurately instructed on the government's burden to prove its case beyond a reasonable doubt); *United States v. Sassak*, No. 23-4046, 2024 WL 3439428, at *2 (4th Cir. July 16, 2024) (concluding that the use of an

Even if there were support for such restrictions on the instruction, however, the record here does not support Mr. Eddings's argument that he merely criticized the lack of evidence produced by the Government's chosen investigative methods. To be sure, Mr. Eddings's defense at trial focused on the lack of photos or videos of Mr. Eddings repositioning the firearm—a criticism of the lack of evidence produced from the Government's chosen methods of surveillance. But Mr. Eddings's counsel also directly and indirectly suggested that other investigative techniques should have been used. On cross examination, defense counsel questioned Sgt. Andazola about whether Mr. Eddings was wearing gloves and whether Sgt. Andazola had requested DNA and fingerprint evidence.[6] He elicited testimony that there was no recorded radio traffic in this case—at least suggesting a failure to provide recordings of Sgt. Andazola's observations in real time about what he observed. And Mr. Eddings asked

_____

investigative-techniques instruction was not plain error and noting that the Fourth Circuit has repeatedly rejected arguments that these instructions mislead the jury into believing that it cannot consider the type of evidence presented).

[6] The district court had instructed the parties not to question any witness regarding DNA or fingerprint evidence unless the court had first made a ruling as to the admissibility of the proposed testimony. The instruction was based on the district court's concern that the DNA and fingerprint reports were inadmissible hearsay, and the Government had not called a witness who could testify as to the contents of those reports. Despite the district court's instruction, defense counsel asked Sgt. Andazola whether he had ordered fingerprint and DNA tests to be run, to which Sgt. Andazola responded that he had. While the district court cut this line of questioning short, the jury was never presented with DNA or fingerprint evidence and was not instructed to disregard that portion of Sgt. Andazola's testimony.

about whether Sgt. Andazola had been issued a video camera to use in investigations, to which Sgt. Andazola responded that he had not.

To meet the second prong of the plain error standard, Mr. Eddings was required to demonstrate that any error was plain—that is, "clear or obvious at the time of the appeal." *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). Mr. Eddings fails to identify any case law suggesting that an investigative-techniques instruction is improper where defense counsel criticizes the government's chosen investigative methods as opposed to repeatedly suggesting that specific investigative techniques should have been used. Furthermore, the record does not clearly support Mr. Eddings's contention that he merely criticized the Government's chosen investigative methods, instead of implying that other available investigative techniques were available but not employed. Accordingly, we cannot conclude that the district court plainly erred in giving the investigative-techniques instruction in this case.

b.      *Whether the instructions lowered the Government's burden of proof*

In his second argument, Mr. Eddings contends that the investigative-techniques instruction—when used in conjunction with the pattern instruction on reasonable doubt—rendered the jury instructions misleading and had the effect of reducing the Government's burden of proof. Mr. Eddings states that the Tenth Circuit pattern instruction on reasonable doubt is an outlier in failing to mention that a reasonable doubt can be found based on a lack of evidence. According to Mr. Eddings, when the jury is told that the government is not obligated to use any

particular investigative method but is not also told that a lack of evidence can give rise to reasonable doubt, it misleads the jury into believing that the government's failure to use certain investigative methods is irrelevant to whether the government has met its burden.

Additionally, Mr. Eddings notes that the investigative-techniques instruction here deviated from the instruction given in *Cota-Meza*, which informed the jury that it was free to consider the government's failure to use certain investigative techniques "for the purpose of evaluating the weight of the evidence produced by the government and the credibility of law enforcement personnel involved in the investigation." *See Cota-Meza*, 367 F.3d at 1223. Mr. Eddings likewise points to other circuits that continue to use this language in their investigative-techniques instructions.

As Mr. Eddings acknowledges, our prior case law has rejected the argument that the Tenth Circuit pattern instruction on reasonable doubt misleads the jury because it fails to explicitly mention that a lack of evidence can give rise to reasonable doubt. In *United States v. Petty*, 856 F.3d 1306, 1311 (10th Cir. 2017), we concluded that the instructions given by the district court made it apparent that a lack of evidence would give rise to reasonable doubt. We pointed to instructions informing the jury that it was the government's burden to prove guilt beyond a reasonable doubt, that the defendant was not required to prove his innocence or present any evidence at all, and that the jury was to base its verdict on consideration

of the evidence. *Id.* From these instructions, we concluded that any reasonable juror would understand that a lack of evidence can give rise to reasonable doubt. *Id.*

Here, the district court's instructions as to reasonable doubt were appropriate under *Petty*. The district court correctly instructed the jury that the government's failure to meet its burden of proof must result in acquittal. It further instructed that Mr. Eddings was not required to prove his innocence or present evidence in his defense. And it instructed the jury that it was to base its verdict on the evidence presented.

Furthermore, in *Trent*, we approved an investigative-techniques instruction identical to the one in this case without the precatory language that was present in *Cota-Meza*. *Compare* Court's Instructions to the Jury at 15 (ROA Vol. I at 51), *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014) (No. 12-6283), *with Cota-Meza*, 367 F.3d at 1223. In the absence of case law to the contrary, we cannot conclude that the use of two instructions individually approved by this court amounts to plain error when used together.

Although the absence of such language is not plainly erroneous, there is nothing to prevent district courts from including it. Several of our sister circuits have included language in their investigative-techniques instructions—similar to that used in *Cota-Meza*—informing the jury that it can consider the failure to use certain investigative techniques when determining whether the government has met its burden of proof. *See, e.g.*, Mod. Crim. Jury Instr. 3d Cir. 4.14 (2024) ("You may consider [the government's failure to employ specific investigative techniques] in

30

deciding whether the government has met its burden of proof."); *United States v. Dennis*, 19 F.4th 656, 671–72 (4th Cir. 2021) (approving use of an investigative-techniques instruction and noting that the district court took care to explain that the jurors could consider the failure to use certain investigative techniques when considering whether the government had met its burden). Although such language is not required when the instructions as a whole correctly instruct the jury as to its role, inclusion of the language from *Cota-Meza* accurately reminds the jury of the purposes for which it can consider evidence that the government failed to use certain investigative techniques.

### D.  Search of the Backpack

Finally, Mr. Eddings argues for the first time in his reply brief that it was plain error for the district court not to suppress the handguns found in the backpack he was carrying at the time of his arrest. Pointing to our decision in *United States v. Knapp*, 917 F.3d 1161 (10th Cir. 2019), Mr. Eddings argues that the warrantless search of the backpack was not a valid search incident to arrest because it was not a search of his person, nor was it justified by a need to disarm him or to preserve evidence. Accordingly, Mr. Eddings contends that the two handguns should have been suppressed as the fruit of an unlawful search.

"[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." *M.D. Mark, Inc. v. Kerr–McGee Corp.,* 565 F.3d 753, 768 n.7 (10th Cir. 2009). We see no reason to deviate from that general rule here, where the Government had no opportunity to respond to Mr. Eddings's

arguments that the search of the backpack was not a valid search incident to arrest. Nor was the Government afforded the opportunity to put forward an argument that suppression of the evidence is nonetheless inappropriate.[7] Accordingly, we decline to consider this argument as waived.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[7] For example, in *United States v. Braxton,* 61 F.4th 830, 833–38 (10th Cir. 2023), we considered whether the inevitable discovery doctrine applied to the warrantless search of a backpack. Here, the Government was not afforded an opportunity to argue that this or other exceptions to suppression might apply.